NEW BEDFORD INSTITUTION FOR SAVINGS & another *vs.*
GUILFORD H. HATHAWAY.

Bristol.   Oct. 25, 1882. — Jan. 9, 1883.   C. ALLEN, COLBURN & HOLMES,
JJ., absent.

The holder of a promissory note, by an arrangement with a solvent surety thereon,
proved the note against the insolvent estate of another surety and then assigned
the note with his claim against the estate to the solvent surety, who paid the
holder in full. *Held,* on a bill in equity, that this amounted to payment of
the note, and that the Court of Insolvency rightly ordered the proof to be
expunged, and the surety to prove only one half of the claim, although he
would not receive more than half of what he had paid for the note, if allowed
to prove to the full amount.

BILL IN EQUITY, filed June 17, 1881, by the New Bedford
Institution for Savings and Stephen Davol, against the assignee
in insolvency of the estate of William C. Davol, to reverse an
order of the Court of Insolvency expunging the proof made by
the first-named plaintiff as holder of a promissory note, signed
by the insolvent as surety.   The case was heard by *Field*, J., on
the bill and answer and the report of a commissioner; and the
following facts were found by him:

On March 8, 1879, William C. Davol was adjudged insolvent,
and the defendant was duly elected and appointed assignee of
his estate.   The plaintiff bank was at this time the holder of
a promissory note for $9000, dated August 6, 1878, payable on
demand, and signed by William C. Davol, Jr. as principal, and
by William. C. Davol, the insolvent, and the plaintiff, Stephen
Davol, as sureties.

After William C. Davol was adjudged insolvent, and William
C. Davol, Jr. was reputed to be insolvent, the plaintiff bank
called upon Stephen Davol for payment of the note; and it was
agreed between the bank and Stephen Davol that he should give
collateral security to secure his liability on the note, and that
the bank should prove the note against the estate of William
C. Davol, and that, after the same was proved and allowed, the
bank should, upon his taking up the note by paying to the bank
the amount due thereon, assign and transfer to Stephen Davol,
or to such person as he might designate, the proof, dividends
and the ·note.   The purpose of this agreement was to assign to

Stephen Davol the same, and to subrogate him to all its rights concerning the proof by the bank and the dividends it would be entitled to receive, the bank desiring that the note should be paid, but being ready for the benefit of the surety to make this agreement.

The note was duly proved against the estate of William C. Davol by the bank, for the whole amount of the note. On August 12, 1879, Stephen Davol took up the note by giving to the bank his own note for $7000, and paying the balance due on the same, principal and interest, in cash, and thereupon the bank transferred the note to Stephen Davol, and gave him an order on the assignee of the estate of William C. Davol for the dividends which might be declared on said proof; and this was done pursuant to said agreement. The first dividend upon the estate was not made till after the note was taken up by Stephen Davol, and the assignee of the estate of William C. Davol did not know of this transaction between the bank and Stephen Davol till long after; and, as soon as he found it out, he filed his petition in the Court of Insolvency to expunge said proof. That court ordered the proof to be expunged, with leave to Stephen Davol to prove for one half of the same, and no more.

The principal on the note is without visible means, and the bank or Stephen Davol will not receive more than fifty per cent of the amount due on the note from the estate of William C. or from the estate of William C., Jr., or from both, if the proof of the note is allowed to stand for the full amount.

Upon these facts, the judge ruled that the order of the Court of Insolvency was correct, and ordered the bill to be dismissed; and, at the request of the plaintiffs, reported the case for the consideration of the full court, such decree to be entered as justice might require.

*J. M. Morton*, for the plaintiffs.

*H. K. Braley*, for the defendant.

DEVENS, J. Whatever agreement was made between Stephen Davol and the bank, by which Davol sought to enforce against William C. Davol, his co-surety, a claim for the entire debt for which they were jointly responsible as sureties of William C. Davol, Jr., the effect of the transaction was at law a payment of the debt. Stephen Davol gave his own note for a portion of

the original note, paid the remainder in cash, and took an assignment of the original note and an order on the assignee of the estate of William C. Davol for the dividends which might be declared on the proof of the original note, which had already been made.

Payment by one of several joint debtors, although it be made by him in the form of a purchase, and be accompanied by an assignment of the debt, is still a discharge of the debt. If the debt be in the form of a judgment, such judgment cannot be enforced by him against his co-debtor, even for his proportion. *Hammatt* v. *Wyman*, 9 Mass. 138. *Brackett* v. *Winslow*, 17 Mass. 153. *Adams* v. *Drake*, 11 Cush. 504. Where the payment thus made is by a surety, as he is entitled in equity to be subrogated to the right which the creditor may have in the securities which have been given him by the principal debtor, so that he may enforce them for his own benefit, the debt is there treated as still existing, so far as it may be required for that purpose. *Wall* v. *Mason*, 102 Mass. 313. The doctrine of subrogation is one recognized in equity, and is ordinarily there enforceable only. It implies an equitable exception to the general principle that payment by one joint debtor discharges the debt as against all, and holds it as continuing to exist for the protection of the parties to the note and the enforcement of their rights *inter sese.* *Wall* v. *Mason, ubi supra.* *Edgerly* v. *Emerson*, 3 Foster, 555. *Brewer* v. *Franklin Mills*, 42 N. H. 292.

Collateral securities are, as their name imports, but incidents of the debt, and they would cease to be available, if that were to be deemed absolutely discharged. A mortgage given by the principal debtor to the creditor to secure the debt which it was his duty to pay, and of which the surety actually paying should have the benefit, would itself be destroyed, if, so far as the surety is concerned, the debt were treated as destroyed. The right which the surety has against the principal rests upon the equitable principle that, if such surety pay the debt, he shall be indemnified therefor by the principal, and it is alike equitable that, as between sureties, one paying the debt shall have his remedy against the other, and the benefit of such securities as the latter may have deposited, to the extent of the obligation he has liquidated for him.

It is indeed said in *Bowditch* v. *Green*, 3 Met. 360, that, by whomsoever the payment of a joint note is made, the collateral security given for the payment thereof is *ipso facto* discharged. This was a case where a surety, having paid a joint note, brought an action at law against a third person upon a note signed by him, which had been transferred to the creditor as collateral security by his co-surety, and which, on payment of the joint note, had been assigned by the creditor to the plaintiff. It had been subsequently paid to the co-surety, who had thus transferred it, and been discharged by him. An equitable proceeding was necessary in order to adjust the rights of sureties, and to determine to what extent either might pursue his claim, upon payment of the whole debt, against the other, or the securities deposited by him. In a suit at law, it was not thought advisable to consider or discuss what might have been the respective rights of the parties, had a bill in equity been resorted to, upon payment by the plaintiff, and had the creditor, debtor and co-sureties been made parties thereto. In that case, if the plaintiff had been allowed to recover upon the collateral note, he would have received more than the proportion of the debt which he had paid on account of his co-surety, and the estate of the latter would have paid correspondingly more than it should have done.

But if it be conceded that the surety paying the debt is equitably entitled to the benefit of such security as may have been deposited with the creditor by the other surety, or may have been obtained against him, the question still remains whether he is entitled to such security, only to the extent of enforcing a claim for that which he has paid on behalf of the co-surety, or whether he may enforce the full claim which the creditor had against the co-surety, provided that he does not himself thus obtain more than he has actually paid on behalf of the co-surety.

The latter is the contention of the plaintiff Davol. The bank, before the transaction which took place between itself and Stephen Davol, and which must be deemed a payment, except so far as the existence of the debt is necessary for the protection of those paying it, by the enforcement of the collateral securities or in any other appropriate mode, had proved the entire

debt against the estate of the co-surety. The plaintiff Davol deemed himself entitled to the benefit of this proof in the name of the bank, in order that he might obtain a dividend on the whole debt, provided he did not obtain thereby more than fifty per cent. This proof made by the bank was expunged by the Court of Insolvency, and the plaintiff Davol was permitted to prove for fifty per cent of the debt only, that being the amount which he had paid on behalf of the co-surety, and for which he was equitably entitled to contribution from him. Even if cases can be imagined where the proof of a debt in insolvency made by a creditor should be preserved for the benefit of the surety paying the debt, as where, for instance, the time for proof of debts had fully elapsed, yet if in such case the surety could be permitted to avail himself of it, only to an amount equal to the debt which was equitably due to him from the co-surety, and thus to a dividend upon that amount, the plaintiff Davol here needs no relief, as all to which he is entitled he has received under the proof he has been allowed to make.

Upon the inquiry involved, the authorities are certainly conflicting. In *Hess's estate*, 69 Penn. St. 272, H. and C. were co-sureties for S., who made an assignment for the benefit of creditors. H. died insolvent, and C. paid the whole debt. The estates of H. and S. were not sufficient to pay fifty per cent of the claim; and it was held that C. was subrogated to the claim as proved, and entitled to a dividend on the whole claim from the estate of H. It is contended that this decision is sustained by the case of *Lidderdale* v. *Robinson*, 2 Brock. 159, afterwards affirmed in 12 Wheat. 594. But in that case the important question was whether a surety who had paid more than one half the debt was entitled to have his claim substituted, as against his co-surety, to the same rank and dignity with the debt which he had paid, as to the excess over and above one half thereof, it having been a specialty debt. This was the only question certified to the Supreme Court, and there decided. It does not bear upon the question whether such co-surety could have been substituted for the creditor for more than one half. It is said by Chief Justice Marshall, "Where a person has paid money for which others were responsible, . . . . he shall be substituted, to every equitable intent and purpose, in the place of

the creditor whose claim he has discharged." But these remarks are to be taken in connection with the case in which they were uttered, where the surety was seeking to enforce a claim for an amount equal to that which he had paid over and above his own share.

The case of *Ex parte Stokes*, De G. 618, also sustains the position of the plaintiffs. A bond was there entered into by the principal and three sureties. The principal and one of the sureties compounded with the creditors, and the other two sureties became bankrupt. The obligee proved the full amount of his debt against the separate estate of the two bankrupts, and claimed under the composition, and by these means received twenty shillings in the pound, but the compounding surety paid more than his contributive share; it was held that his estate was entitled to the benefit of the proof made by the obligee against the bankrupt surety, and that when, as between the estates of the two sureties, one having become bankrupt, the creditor had proved his debt under the fiat, and had afterwards been paid in full, partly by the principal debtor and partly by the surety not a bankrupt, the latter had the right to use the proof for the purpose of obtaining from the bankrupt's estate that amount of contribution to which the bankrupt was, or but for the bankruptcy would have been, liable, so far as the proof could furnish means for that end. It was said by the Vice Chancellor, in deciding it, that he did not think the case free from difficulty.

No notice was taken of the case of *Keith* v. *Forbes*, 3 Paton, 350, and *S. C. nom. Maxwell* v. *Heron*, 3 Ross Lead. Cas. 129, affirming a Scotch appeal, which did not apparently involve any principle peculiar to the law of Scotland, in which it is held that, when a co-surety has paid the full amount of the principal debt, he is not entitled to rank on the estate of an insolvent co-surety for the whole debt, to the effect of enabling him to draw the sum which the insolvent surety would have paid if he had continued solvent, but he is entitled to rank for that sum only. Nor of the case of *Ex parte Elton*, 3 Ves. 238, where Lord Chancellor Loughborough, after stating that if, where B. and C. are partners, the creditor proves his whole debt against the separate estate of the insolvent copartner, the assignees of

that estate have no claim against the estate of the solvent copartner, unless the amount received by them exceeds fifty per cent, adds : " If the case is turned the other way, and the creditor first sues the solvent partner, he recovers all the debt against him; and he has a right to come in as a separate creditor of the bankrupt to the amount only of a moiety of that debt; for a moiety only of the debt of the partnership he could have recovered against him, if he had been solvent." " That," he also observes, " makes a very great difference to the separate creditors."

In this conflict of authority, we are brought to the conclusion that neither in his own name nor in that of the creditor ought the surety paying the debt to enforce any claim against his co-surety, except for the amount actually paid by him for his co-surety, and if, by reason of the insolvency of such surety, there is a loss, it is one to which the relation in which they stand to each other compels him to submit. Whether the liability of the co-surety is rested upon an implied contract or on the general principles of equity, it is a liability only for that which the other has paid for him. The argument that the paying surety should be allowed to retain and avail himself of the proof of the whole debt made by the creditor, because he will thereby obtain only the amount which his co-surety ought to and would pay if he were not insolvent, is fallacious. He should be allowed to use the creditor's name, or the security the creditor has obtained, only to enforce the right which he has against the co-surety by reason of the payment which he has made on his account, and that was a payment of but one half the debt. As between himself and his co-obligor, it was his own duty to pay the other half. Because the creditor might have proved and received a dividend upon the whole debt, this affords no reason why the paying surety should. To the creditor the co-surety had promised he would pay the whole debt, but as between the sureties each was a debtor only to the amount of his proportion. To allow a co-surety to exaggerate this claim would do injustice to other creditors of the insolvent surety. It would be using the fiction of the law that the debt is still unpaid, — which is adopted in equity to protect the paying surety by keeping the debt alive in order that securities may be realized for his benefit, — so that

unfair advantage would thereby be taken of other creditors of the insolvent. It is true that, as the creditor may think fit to proceed, different results to the surety may sometimes occur. If the creditor takes full payment from the solvent surety, it will be for the advantage of the estate of the insolvent surety. If, on the other hand, he proceeds in the first instance against the estate of the insolvent surety, it is for the advantage of the solvent surety. This result is produced by the different liability which the sureties owe to the creditor, and that which they are under each to the other, but it affords no reason for enlarging the latter.

The case of *Apperson* v. *Wilbourn*, 58 Miss. 439, in some respects resembles *Ex parte Elton*, *ubi supra*. The creditor had proved his whole debt against the estate of one surety who was insolvent, but had received less than one half therefrom. The remainder having been paid by the solvent surety, a bill was filed against him on behalf of the insolvent estate to compel the solvent surety to pay to the insolvent estate one half the sum paid by it upon the bond to the creditor. The bill was dismissed. It is said by the court *arguendo*, " We are quite sure that if the solvent estate had paid the debt it would have been entitled to prove only one half of it against th  other, and to receive a dividend on the half; but as the credit r got less than half the claim from the insolvent estate, no righ exists in it to visit on the estate of the other surety the loss it would have had to bear if the creditor had resorted to it in the fi t instance for the whole demand."

As we deem the plaintiff to have obtained all to which he was entitled, by being permitted to prove his claim against his co-surety for the full amount which he had actually paid for such co-surety, he is not entitled to any relief in equity.

*Bill dismissed.*