### In re THOMPSON.

(District Court, W. D. Pennsylvania. July 5, 1924.)

No. 8726.

Bankruptcy ⬦⟫322—Cosurety, who has paid debt, entitled to dividends on whole debt.

One of a number of sureties, who has paid the whole debt, succeeds to all rights of the creditor whose claim he paid, with the right to receive dividends from the estate of a bankrupt cosurety on the whole debt, not exceeding in the aggregate the amount for which bankrupt was legally liable as between himself and solvent cosureties.

In Bankruptcy. In the Matter of William M. Thompson, bankrupt. On review of order of referee. Reversed.

⬦⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Sterling, Higbee & Matthews, of Uniontown, Pa., for petitioner.

THOMSON, District Judge. This case raises the legal question whether a surety, who has paid the whole debt, has the right to dividends from the estate of an insolvent cosurety on the whole debt, or only on the proportionate part for which the cosurety is liable. The material facts of the case are these:

Anderson was the holder of 15 promissory notes, drawn by J. V. Thompson or J. R. Barnes, to the order of Semans, Hogsett, William M. Thompson, the bankrupt, Rosboro, and Hess, who indorsed the notes. Anderson recovered judgment against Thompson, the bankrupt, for the full amount of the notes, obtaining a lien against all his real estate in Pennsylvania. Afterwards Anderson compelled Hess, one of the coindorsers, by proceedings against his property in West Virginia, to pay the entire indebtedness. Hess realized from certain bonds pledged with him by J. V. Thompson, one of the makers of the notes, a certain sum which reduced the claim to $34,558.29, for which proof was made and allowed, the amount of which is not in dispute. Thompson and Barnes, the makers, are insolvent. Hogsett, one of the indorsers, is insolvent, and can pay nothing. Semans, Hess, and Rosboro, the other cosureties, are solvent. Hess assigned his claim, for value, to the Federal Security Company; it being conceded, however, that the rights of the assignee are in no way superior to those of Hess. Certain real estate of Thompson, the bankrupt surety, on which the judgment in question was a lien, has been sold 'and two distributions of the proceeds made; each amounting to 6 per cent. In each distribution the Federal Security Company claimed 6 per cent. on the full amount of the claim as proved; but the learned referee held that it was entitled only to such dividends on the one-fourth of such claim as proved and allowed. Since the question was raised, it has been determined that the real estate on which the judgment was a lien would pay 20 per cent. of the liens against it, thus reducing the claim as proved to $29,646.63.

The court must determine, therefore, whether dividends out of the common fund are payable on this amount, or on the one-fourth part thereof. The several indorsers, being joint payees, are joint indorsers, subject to joint action, and, as between themselves, are ratably liable to each other. Therefore the paying surety has a right of action against each of the solvent cosureties for one-fourth of the amount paid by him, and entitled to dividends on his claim, not exceeding in amount the one-fourth of the debt paid for which the bankrupt was legally liable.

Concisely, therefore, the question is: Does the paying surety stand precisely in the shoes of the creditor whose claim he paid, thus entitling him to dividends as such creditor would have been, on the whole claim, as against the bankrupt surety, or only on the one-fourth part thereof? This is a legal question of long standing, which we seem to have inherited from the mother country, and courts of high authority have reached opposite conclusions in well-reasoned opinions. But I am satisfied that, while forceful arguments are present to sustain the con-

trary view (and these are well set forth by the learned referee in his opinion), the great weight of authority, supported by satisfactory reasoning, allows the paying surety to make proof against the estate of his cosurety exactly as the creditor could whose debt he paid, being limited only to the ratable part for which the surety is liable.

While it is argued with much force that neither in his own name nor in the name of the creditor should the paying surety be permitted to enforce any claim against his cosurety, except for the actual amount paid by him for his cosurety, and that, if the latter's insolvency occasions loss, it is one to which the necessities of the case compel him to submit, and, further, that it is inequitable, as against the other creditors, that dividends should be awarded to the paying surety, greater in amount than that paid to the other creditors, because proof is made on the entire debt paid, and not on the actual amount owing by the surety. But the principles upon which the authorities rest seem to answer this position satisfactorily, and to be in harmony with the equities of the case, when the whole situation is considered. These principles may be summarized as follows:

First. Where several creditors are severally liable for a debt, the creditor under his contract may enforce payment in a manner which is unjust as between the debtors themselves, and in such case it is the duty of a court of equity to place them, as between themselves, as if the creditor's rights had been enforced against them in a manner conformable to their rights against each other, if this be possible.

Second. A surety who pays the common debt is entitled to subrogation to all the rights and remedies of the creditor, and this rule applies in the same manner against a cosurety as against the principal debtor.

Third. On the death, assignment for the benefit of creditors, or the bankruptcy of a debtor, the rights of his creditors become fixed, and the assets of the estate pass as a trust fund into the hands of his representatives, charged with the payment of his debts, and thereupon the creditor becomes the owner, for the purpose of securing the debt, of that part of the assets, being such proportion to the entire assets as his debt bears to the entire indebtedness. At that date the creditor is deprived of his remedy of suit, judgment, and execution, and his equitable interest in the assets is substituted therefor, and this interest remains fixed and constant until the debt is paid.

Fourth. For this reason, and this alone, it has been established that a creditor with collateral, on which he has realized, may prove his full claim against an insolvent estate. It is true, his debt is to that extent extinguished; but he is entitled to distribution, not strictly as a creditor, but as part owner of the assets or trust fund, and the extent of such ownership is limited by the amount of the debt which was unalterably fixed at the date of the death or insolvency. Therefore on his right to dividends on such debt subsequent payments have no effect.

Fifth. The application of this rule makes the rights of the paying surety fixed and certain, instead of uncertain and depending on the caprice or election of the creditor to proceed first against the insolvent, or against the solvent surety, causing different results to the paying

surety. Equity would seem to require that the rights of the parties should be definitely fixed by law, rather than made dependent on the uncertain procedure of the creditor.

Certain leading cases, when considered togther, firmly establish the foregoing principles. In the case of Pace v. Pace, 95 Va. 792, 30 S. E. 361, 44 L. R. A. 459, the Supreme Court, in its opinion, discusses the origin of the rule, some of the reasons upon which it is founded, and the leading authorities in which it finds its support. This case also discusses the opposite rule, as maintained by the Supreme Court of Massachusetts in New Bedford Institution for Savings v. Hathaway, 134 Mass. 69, 45 Am. Rep. 289.

The rule is firmly established in Pennsylvania, as appears in Hess' Estate, 69 Pa. 272, where in a well-considered opinion the prior Pennsylvania cases are cited and the reason of the rule discussed. The opinion of Judge Taft, speaking for the Circuit Court of Appeals, in Chemical National Bank v. Armstrong, 59 Fed. 380, 8 C. C. A. 155, 28 L. R. A. 231, fully discusses the general question on principle, and perhaps better than any of them elucidates the reason upon which the rule really rests.

The case of Lidderdale v. Robinson, 15 Fed. Cas. 502, was tried before Chief Justice Marshall, and involved the question whether a surety, who had paid a debt which was entitled to a certain priority or dignity in the distribution of the assets of the principal debtor, was entitled to such priority in the distribution of the estate of his cosurety. In sustaining such right the Chief Justice said:

"But it has been supposed that, though this rule must be admitted as applicable to cases between a surety and his principal, it will not apply between cosureties. I can perceive no reason for this distinction. The principle which the cases decide is this: Where a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted, to every equitable intent and purpose, in the place of the creditor whose claim he has discharged. This principle of substitution is completely established in the books, and being established, it must apply to all persons who are parties to the security, so far as is equitable. The cases suppose the surety to stand in the place of the creditor, as completely as if the instrument had been transferred to him, or to a trustee for his use. Under this supposition, he would be at full liberty to proceed against every person bound by the instrument. Equity would undoubtedly restrain him from obtaining more from any individual than the just proportion of that individual; but to that extent, his claim upon his cosurety is precisely as valid as upon his principal."

This case was affirmed by the Supreme Court of the United States in 12 Wheat. B. 594, 6 L. Ed. 740, in an opinion which fully sustains the rule in question here.

In obedience to these high authorities, and finding myself in harmony with their reasoning, which seems to best meet the equities of the situation, I am constrained to reverse the report and order of the learned referee, and direct that distribution be made in harmony with this opinion; and it is so ordered.