MOSES A. BLEDSOE *v.* ELIZABETH A. NIXON and others.

A surety who pays the bond of his principal thereby discharges it; and his right of action against the principal for the recovery of the amount of such bond being upon a simple contract, is barred after three years by the statute of limitations.

A, B and C enter into a copartnership with a capital of $8,400. A sells out to B, who, after reciting that the concern had incurred a debt for capital stock for which A, B and C "were equally liable," covenanted to "assume the payment of all liabilities incurred by the said A on account of the aforesaid business," and B further agreed "to pay off and discharge all the liabilities incurred by said A on account of the aforesaid business, so that the said A shall come to no loss or damage:" *Held,* that B was responsible to A for his share of the capital stock, and that the share of each was a charge against the copartnership business.

CIVIL ACTION, tried before *Watts, J.,* at the January Term, 1873, of WAKE Superior Court.

The suit is brought by plaintiff against the defendants,

who are the legal representatives of Jere. Nixon, deceased, and for the adjustment of an account and for a settlement of the same, and also for the performance of sundry covenants contained in articles of agreement entered into between the original parties, some of which were as far back as 1853. The suit was referred, and upon the coming in of the report of the referee, both parties excepted to it. His Honor confirmed the report as to the facts reported and as to the conclusions of law found, from which judgment the plaintiff appealed.

The two material exceptions to the report made by the plaintiff, and the only two receiving the attention of the Court, is sufficiently set out in the opinion delivered in the cause.

*Smith & Strong* and *Battle & Son,* for appellant.
*Haywood* and *Fowle,* contra.

RODMAN, J. The first exception to the report of the referee is as to his conclusions of law respecting what is called the Poole note. The parts reported are as follows:

On 9th March, 1850, Jere. Nixon made his bond to Poole for $800, with Bledsoe and Yarborough as his sureties. On 9th July, 1855, Bledsoe paid the note and Poole indorsed and delivered it to him. The referee finds that Bledsoe did not intend to pay off the bond, but to keep it alive against the estate of Nixon who was then dead, and that Poole transferred it at the request of Bledsoe for that purpose. Jere. Nixon died December, 1854, and administration was granted on his estate, at February Term, 1855; the administrator died October, 1868, and Macy became administrator *de bonis non* March, 1871. The referee further finds that Nixon had made some payments on the bond before it was paid off by Bledsoe; that exclusive of the time from 21st May, 1861, to 1st January, 1870, more than ten years had elapsed between

the last payment by Nixon and the time when plaintiff, Bledsoe, by amending his complaint in the action made the bond a cause of complaint; but that ten years had not elapsed from the payment by Bledsoe up to said amendment.

These latter matters in the view we take of this case are of no importance.

It is clear, at least at law, that by paying off the bond the plaintiff discharged it, and his right of action against Nixon upon a simple contract was barred by the statute of limitations in three years.

There are a number of cases which say that where parties contract in writing, and by mistake as to a matter of fact, or by accident, the writing differs from the contract really made, a Court of Equity will reform the written evidence of the contract, to make it conform to the real intentions of the parties.

There are also a number of cases in which it has been held that when the written contract contains accurately the real contract of the parties, although its legal effect is different from what the parties supposed it would be, in such cases a Court of Equity will not reform the contract so as to give it the effect in law which the parties expected it would have. The leading case on this doctrine is *Hunt* v. *Rousmaniere*, 1 Am. L. C. 404, and notes. But it is not necessary for us to enter into any discussion of such questions. In this case the writing was exactly what the parties desired it should be as a matter of fact, and had in law the effect they expected and intended it should have. It was evident that plaintiff, as surety for Nixon, had paid his debt, and by virtue of such payment he acquired a right of action against Nixon, which was what he expected and intended. His mistake, if any, was in supposing that his right would not be barred in three years. This is a mistake which many creditors have made, but they have not been relieved in Equity. We think this claim was barred by the statute of

limitations, and (that statute being pleaded) did not form a legal item in the account between the plaintiff and the representative of Nixon. Report of referee affirmed.

2. The second exception is as to the finding of the referee upon the legal effect of the contract between plaintiff and Jere. Nixon, dated 12th May, 1854. The facts on this question so far as they are material are these.:

In the Spring of 1853, plaintiff, Nixon and Hall formed a partnership in a saw-mill. In October, 1853, Hall sold out to Nixon and Bledsoe. On 21st November, 1853, plaintiff, Nixon and Snow formed a partnership for the same business. They began business 1st January, 1854, and continued until 12th May, 1854. The capital stock of this partnership was made up by Snow putting in property valued at $3,991.77, and by Bledsoe and Nixon putting in an engine, &c., known as the Burns engine, and other property, valued in the aggregate at $4,433.50, making the total capital stock $8,425.20. No member of the firm appears to have put in any money. The firm contracted no debt for its capital stock.

At the time the partnership of Bledsoe, Nixon and Snow was formed, the partnership of Bledsoe and Nixon owed Burns $4,000 or thereabouts for the Burns engine. This debt was paid on the 15th December, 1853, in part by a sale of certain property belonging to the firm of Bledsoe and Nixon, and in part by the proceeds of a note of Nixon and Bledsoe for $2,500 payable to some bank and afterwards paid by Nixon. Since the making of the agreement about to be mentioned, plaintiff has never been compelled to pay any debt of Bledsoe, Nixon and Snow, and it does not appear whether or not any such debts existed on the 12th of May, 1854, when the following agreement was entered into between Bledsoe and Nixon: " Whereas Jere. Nixon, Theophilus Snow and M. A. Bledsoe, all of the county of Wake and State of North Carolina, entered into an agreement to

carry on the steam saw-mill business in the county of John-ston, in the State aforesaid, with a capital of $8,400.22 or thereabouts, to commence business on or about the 1st of January, 1854, and incurred a debt for the amount of their capital stock for which the aforesaid parties are equally lia-ble, and whereas the said company had incurred other lia-bilities previous to the 1st of January, 1854, for the benefit of the aforesaid business in the purchase of provisions, &c., and have incurred similar liabilities for hands, provisions, &c. : *Now, therefore,* It is agreed between the said Bledsoe and the. said Nixon that the said Bledsoe for and in conside-ration the said Nixon shall, (and doth hereby) assume the payment of all liabilities incurred by the said Bledsoe on account of the aforesaid business, and for the further consideration of the sum of two hundred and fifty dollars,. bargain sell and convey unto the said Nixon all his right,. title and interest in and to the aforesaid business, capital stock and profits resulting from the same.

And the said Nixon hereby agrees and binds himself to pay off and discharge all the liabilities incurred by the said Bledsoe on account of the aforesaid business, so that the said Bledsoe shall come to no loss or damage. It being un-derstood that the said Nixon is to occupy the place and stead of the said Bledsoe in the aforesaid business, and for the privilege of doing so is to pay the said Bledsoe the sum of $250." Signed and sealed by the parties 12th of May, 1854..

For the defendant it is contended that the plain and natural meaning of the covenant on the part of Nixon is merely to indemnify Bledsoe from any debts and liabilities he had on account of the business of the firm of Bledsoe,. Nixon and Snow, and that inasmuch as there were no such liabilities, or if there were that Nixon has indemnified Bledsoe against them; the covenant has not been broken, (except as to the $250, about which there was no contro-versy,) and the plaintiff is not entitled to any damages.

On the part of the plaintiff it is argued, that admitting that such would be the natural (though not the necessary and only possible,) meaning of the words in the operative part of the covenant, if taken detached from the recital; and admitting that legally speaking the capital stock which one partner puts into the business is not a debt owing by the partnership to him, (at least not unless by some special agreement it be made such,) yet it is not uncommonly so regarded and spoken of, both by ordinary business men, and in the most refined and perfect systems of book-keeping. When a man makes an investment in the stock of a corporation, or in a share of a partnership, or in a farm, a mine or other property, nothing is more usual than to open an imaginary account, in which the business or the investment is considered as debtor to the investor, (that is to his capital otherwise invested, from which the money for this particular investment was taken,) for the amount invested, and all receipts from the business are put down as credits. In no other way could a man engage in several pursuits, keep an accurate account of the profit and loss from each. It is true that the more accurate way of keeping such an account would be under the heading, "My share in the partnership of A, B & Co., Dr.," but it might naturally happen that a man not accustomed to accuracy of thought or expression, would in his own mind or even on his books, consider the partnership his debtor.

Turning then to the recital to explain the somewhat ambiguous language of the other parts of the instrument, we find that the parties did in fact consider the capital stock put in by the several partners as a debt from the partnership to them severally. Its language, although not accurate, admits of no other construction.

It states that the partners had incurred a debt for the amount of their capital stock, for which they are equally liable. When we consider in connexion with this that the

several partners had incurred no debt to raise and put in their respective shares of the capital stock, and that if they had, such debt would not (or at least would not clearly) come within the description of the debts against which Nixon agrees to indemnify Bledsoe, and that the property which the several partners had put in to the aggregate value of $8,400 was regarded as the capital stock, we can put no other meaning on the words of the recital (which nevertheless had some meaning) than that the parties regarded the value of the capital stock of each as a debt from the partnership to him, and thus covered by the agreement to indemnify. This construction harmonizes with the somewhat loose language of the covenant by which Nixon agrees to discharge liabilities of Bledsoe on the account of the aforesaid business, so that he shall come to no loss. Whereas, if the intent had been merely to indemnify Bledsoe against debts then owing by the partnership to third persons, we should naturally expect other and clearer language to be used.

We agree with these positions of the counsel for the platntiff.

We think the plaintiff entitled to credit for one half the value of his capital stock.

The conclusion of law of the referee on this point is reversed. It is referred to the Clerk of this Court to remodel his report in accordance with this opinion. A decree will be drawn accordingly. Neither party will recover costs in this Court.

PER CURIAM.                    Order accordingly.