Syllabus.

76 537
99 268
| 99 484

# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## DOBYNS AND DAVIS V. RAWLEY.

### July 27, 1882.

JOINT PURCHASERS—*Sureties—Substitution—Innocent purchaser—Setoffs—Alteration of bond.*—F conveys land to joint purchasers, R and J, but retains lien for unpaid price. They divide it, valuing R's part at $2.600, J's at $2.400, and R conveys to J his part, retaining no lien. R (J uniting) conveys his part to F D, retaining lien for unpaid price. R and J pay F equally, except on note of $1,500 for last instalment, whereof R owed $850 and J $650; but R paid $450 on it, when F D took it up from F. By recorded title-bond, J sold his part to B, who owed balance of $1,350 on the price. In 1879 R sued F D to enforce his lien for unpaid price, making only F D defendant; but all concerned were ultimately made parties by amended bills, that were demurred to as multifarious. B claimed that he was purchaser for value without notice; but the conveyance from F to R and J, retaining lien, was recorded before B bought. J relied on $600 note of R to J, *as guardian,* and $1,000 bond of P and R to J, partly in his own right and partly *as guardian,* as setoffs against any sum demanded of him by R on note given by R and J to F and held by F D. The $600 note was included in a judgment confessed by J to his wards, but which, though possibly secured, was not paid. The $1,000 bond had been changed in a material point by J without R's consent.

HELD:

1. F D is entitled to set off the note of R and J, which he took up from F, against the balance he owes on the land conveyed to him by R and J.

2. R hath a lien on the land conveyed by him to J, in the hands of B, who is not a purchaser for value without notice, not having paid all the purchase money, and being affected with notice of the lien on the whole land conveyed by F to R and J, which is retained on the face of the recorded deed; and to satisfy that lien, so much as is necessary for the purpose must be sold.

3. The amended bills are not multifarious, the new parties and matters being necessary.

VOL. LXXVI—68

4. The $600 note is not a proper setoff against R's claim, as J holds it only as guardian, no title, in his own right, having been vested by mere confession of judgment to his wards.

5. Had the wards' money been, by agreement actually executed, applied by the guardian to pay his own debt to R, such application would not be allowed to stand as against the wards. And even as between R and the guardian, such agreement would not be carried out by this court.

6. The $1,000 bond having been materially changed by J, after its delivery, is null, and of course cannot be used as a setoff against R's claim on J.

Appeal from decree of circuit court of Carroll county, rendered October, 1881, in the suit of John W. Rawley against Jeremiah Davis, B. W. Dobyns, Franklin Derting, S. M. Fulton and others. The facts and proceedings are indicated in the *syllabus* and fully stated in the opinion of the court.

From the decree against them the defendants obtained an appeal to this court.

*Hale & Brown,* for the appellants.

*Walker & Bolen,* for the appellee.

BURKS, J., delivered the opinion of the court.

The purchase money for the tract of land sold and conveyed by Fulton to Rawley and Davis jointly was $5,000, for the payment of which they executed their joint bonds. In the subsequent division of the land between the purchasers, Rawley's parcel was rated at $2,600 and Davis' at $2,400, and in this proportion they were to discharge their joint indebtedness to Fulton.

The legal effect of the arrangement was, that as between the two purchasers and in relation to each other, they were principal debtors for their respective portions of the pur-

chase money, and each was surety for the other's portion. It results, that if either paid more than his agreed share, he became entitled to all the rights and remedies of a surety—to subrogation among the rest—against the other for repayment of such excess. This principle was applied to joint purchasers of land in *Tompkins* v. *Mitchell*, 2 Rand. 428, and was recognized in *Horton and others* v. *Bond*, 28 Gratt. 825, as the true ground for substitution to enforce contribution among co-sureties. It is there said that "the sureties, however, are not only sureties of the principal debtor for the whole debt, but, as amongst themselves, they are each surety for the other to the extent of the excess of the whole debt beyond his proportionate part thereof." See also 1 Parsons on Contracts, ch. 2, § 3.

It is understood to be admitted, if not, it is proved, that Rawley and Davis paid all the purchase money in equal portions to Fulton, except the last instalment of $1,500. As Rawley, under the arrangement with Davis, was bound to pay $200 more than Davis on the whole Fulton purchase, he was chargeable to Davis with this sum on the last instalment, which sum deducted would leave the residue to be paid equally between them—that is, he was bound to pay $850 and Davis $650. Two payments, one of $200 and the other of $250, were made on this instalment and credited thereon. It is admitted that Rawley paid the $200, and he claims that he also paid the $250. Davis disputes the payment of the latter sum, but we think the weight of the proof is that it was made by Rawley. When Derting subsequently acquired the bond for this instalment from Fulton, he at the same time acquired, as an incident of the debt and a security for its payment, the lien which had been reserved by Fulton on the whole tract of land sold to Rawley and Davis and afterwards divided between them. He had the right to stand in Fulton's shoes, and at his instance equity would have enforced against the land ac-

quired by Davis in the division payment of his portion of the balance due on the bond; and Derting had the right to insist that, before he could be required to make any further payments to Rawley on the land purchased from him, Rawley should relieve the land of the lien; and Rawley had the equitable right to require, as against both Davis and Derting, that Davis should pay his portion of the debt, and that the lien on his land should be enforced for that purpose. These plain equities among the parties made the amended bills of Rawley proper, if not necessary, and therefore they were in no sense obnoxious to the objection made for multifariousness.

The court having all the parties in interest before it, by its decree credited the whole of the balance of the Fulton debt on the purchase money due from Derting to Rawley, the effect of which was a payment of the whole by Rawley, and then charged in favor of Rawley against Davis what should have been paid by the latter, and ordered a sale of his portion of the Fulton land for the payment of the sum so charged. The equities of the parties *inter sese* were thus worked out with convenience, and the costs of several suits prevented. Assuming (for the present) that Davis is not entitled to the set-off he claims, *he* certainly has no right to complain of the enforcement of the lien for the balance due from him on the Fulton purchase; but it is insisted on behalf of Dobyns, the purchaser from Davis, that the lien cannot be enforced as against him, because he is a *bona fide* purchaser for valuable consideration without notice of the lien. In our opinion, he is by no means such a purchaser. In the first place, it does not appear that he has paid the purchase-money. It seems, he was to pay $3,000. On this sum he was credited with $1,750, the amount of a debt said to be due him from Davis, and for the residue ($1,300) Davis, in one of his depositions says, he still holds Dobyns' notes.

Now, if this be true, the balance owing by Dobyns on his purchase is sufficient to discharge the Fulton lien to which Rawley was substituted, and Dobyns is not injured. But suppose he had paid every dollar of the purchase money under his contract with Davis, and the recorded title-bond which he holds be treated as equivalent to a conveyance of the land, still he is not protected, for he purchased with notice of the lien. In the deed of conveyance from Fulton to Rawley & Davis, a lien for the purchase money is expressly retained, and that deed was duly recorded some time before Dobyns made his purchase. He claims under one of the grantees in that deed and by operation of law is as clearly and conclusively affected with notice of the lien reserved as if he had had actual knowledge of it. It is further contended, however, that in making his purchase he was misled in several ways by Rawley, and that the latter is estopped by his conduct to set up the lien.

And, first, it is said that because in the deed from Rawley to Davis for the land which was assigned to the latter in the division the Fulton lien is not referred to as retained, Dobyns had the right to presume that the lien was satisfied. We do not perceive the force of this argument. The deed was in terms and in fact merely a deed of partition, or one of two deeds of partition, of the land between the parties, and does not purport to be anything else. It expressly refers to the joint purchase from Fulton, and thus directly to the source of the joint title, which was evidenced by Fulton's deed on record showing on its face the reservation of the lien. But it is further urged that at the time Dobyns purchased, Davis had in his possession the first two of the Fulton bonds or notes—one for $1,800, and the other for $1,500—and that Davis assured him that he had paid off his portion of the purchase money, and his possession of the bonds induced reliance on the truth of the assurance.

Of course, Rawley cannot be held responsible for the unauthorized statements of Davis, and as to the bonds after payment, Davis was as much entitled to the custody of them as Rawley, and no man of ordinary prudence could have been misled by such possession. It was the duty of Dobyns to make inquiry of Fulton and Rawley. If he had done so, he might have been protected. His failure to make the inquiry was his own negligence and folly, and he must take the consequences.

But the learned counsel further contends that even if the amount decreed against Davis was correct and constituted a lien on the land sold by him to Dobyns, yet the court erred in not allowing the setoffs claimed by Davis in his answers.

First, as to the note for $600. That is a note of Rawley to Davis, guardian of Mary J. and Frances R. Davis, for money lent as such guardian, and Davis, in his answer to the amended bill, avers, and in his deposition testifies, that this money was lent by him as guardian under an agreement with Rawley, that it was to be applied by him towards the payment of his part of the purchase money due Fulton, and was to be repaid to Davis by Rawley's discharging an equivalent portion of the purchase money due by Davis to Fulton. Rawley denies this agreement. But, if established, it is such an agreement as, if executed by the parties, no court of equity would allow to stand as against the wards; and if not executed, the court *a fortiori* would not carry into effect. The court will not allow, much less aid, a guardian to apply the estate of his wards to the discharge of his individual indebtedness. See *Hunter* v. *Lawrence's Adm'r and others*, 11 Gratt. 111, 131; *Asberry's Adm'r* v. *Asberry's Adm'r and others*, 33 Gratt. 463.

But it is further insisted that this note has become the individual property of Davis. This cannot be, unless he has paid the debt represented by it to his wards, or he has

been in some way released or discharged from the payment.

It is not shown that he has either made payment or been released in any way. It is true, he says, that the amount of the note is included in a judgment confessed by him in behalf of his wards, and that the judgment is secured by lien on lands sufficient to satisfy it. If this were so, still the security is not payment, nor equivalent to payment unless accepted by the wards as such, and there is no pretence of proof to that effect. But upon examination of the record, we find that conceding that the amount of the note is embraced in the judgment, the lands of Davis, on which the judgment is a lien, are not sufficient to pay it in full. After the proceeds of the lands (all of which have been sold), including rents, shall have been applied to the liens, the judgment will not be wholly satisfied. A considerable part will remain unpaid. Besides, there are other serious difficulties. · The causes in which these liens are being enforced are pending suits, and the decrees directing the application of the rents and proceeds of sales are interlocutory. There has been no final decree, and but little money has as yet been realized in the causes.

It may be that these interlocutory decrees may be entirely changed on rehearing of the causes before final decree. The sales may be set aside for some good cause, or if not set aside, there may be resales upon which the prices at the former sales may not be realized, and if the former purchasers prove insolvent, the funds may be greatly diminished. Then, before the termination of the causes, it may be ascertained that there are other liens, prior in time and superior to the lien of the judgment in question. In fact, it appears that in the causes in which this judgment is being enforced, there is an order of inquiry as to other liens still unexecuted. So that Davis is not the owner in his own right of the note he claims to set off, and, for aught that appears to this court, he may never be.

Under these circumstances, the claim was properly disallowed. The appellant's counsel argues that if not allowed, the proceedings in the cause should have been suspended until it was ascertained certainly in the other causes referred to whether the judgment of the wards would be paid or not. This would be a most singular and unprecedented proceeding—that a creditor, whose claim is established and presently due, should be denied relief until it was determined in another cause, to which he is not a party, whether his debtor can acquire a setoff.

Second, as to the bond for $1,000 prayed to be set off. This bond was executed by Prather as principal and Rawley as surety, and is payable jointly to Davis in his own right and as guardian of the Davis children and to his two sisters, who, it seems, have assigned their interests to him. The objections (which have been stated) to the note as a setoff apply with greater force to this bond.

But there is another and more conclusive reason why it should be rejected. It is not the bond of Rawley. Though once his obligation, it was rendered invalid as to him by alteration after it was executed.

A material alteration of a bond or note after its execution, when intentionally made by one having an interest in it, and without the consent of the party bound by it, invalidates the instrument as to such party. This is the general rule to be deduced from the authorities at this day, and the chief reason of the rule is said to be that the "alteration destroys the identity of the contract; and, therefore, if a party to the contract who has not consented to the alteration, were to be held bound by it, it would be, in effect, imposing upon him against his will a new contract, to whose terms he never agreed." Note to *Woodworth* v. *Bank of America,* 10 Amer. Decisions, 267, and cases there cited; see also *Newell* v. *Mayberry,* 3 Leigh, 250.

That the bond was altered after it was executed and passed into the hands of Davis, one of the obligees, is not

disputed. This is admitted by Davis in his supplemental answer to the amended bills. The alteration consists in the addition of words which makes the bond bear a higher rate of interest than it otherwise would have borne. This alteration is material. An alteration is material when it changes the legal effect of the contract—changes the contract in a material particular. It was made by a party in interest, by Davis or by the procurement of Davis, one of the obligees and the holder of the bond; and, it is clearly shown, that it was made in the absence and without the knowledge or consent of Rawley. There cannot be a doubt, therefore, that the alteration rendered the bond void as to Rawley. It does not help the matter that the alteration was made, as stated, to correct an alleged mistake, so as to make the bond conform to the original agreement of the parties. Even if that was the purpose, Davis had no authority to make the change without Rawley's consent. And as Rawley was a mere surety, even a court of equity, on bill for the purpose, probably could not correct such a mistake as against him.

A motion was made for the continuance of the cause on the ground that this bond, originally filed, had been lost out of the papers. But there was an exact copy furnished by Davis himself, and as there was no controversy as to the execution of the original, or as to the credits endorsed, the copy was sufficient for the purposes of the case, and the motion was properly overruled.

It is so clear that it was not necessary or even proper to make the wards of Davis parties to the cause, that the proposition need not be discussed.

We believe that we have noticed, though not in regular order, all the assignments of error by the appellants, and we are of opinion that there is no error in the decree complained of, and it will therefore be affirmed.

DECREE AFFIRMED.