## W. E. LIVERMAN v. F. L. W. CAHOON.

(Filed 11 October, 1911.)

**Notes—Joint Makers—Payment by One—Indorsement to Maker—Cancellation—Implied Promise to Pay—Limitations of Actions.**
   The payment of a note by one of two of the makers, with indorsement thereof without recourse to himself, cancels the note, and entitles him to recover one-half the amount thereof upon an implied promise to pay by the other obligor; and when there is no promise made not to plead the statute of limitations, action should be brought within three years or recovery will be barred.

   WALKER, J., dissenting; BROWN, J., concurs in the dissenting opinion.

APPEAL by plaintiff from *O. H. Allen, J.,* at Spring Term, 1911, of TYRRELL.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*E. F. Aydlett and T. H. Woodley for plaintiff.*
*I. M. Meekins and M. H. Tillett for defendant.*

CLARK, C. J.   On 21 June, 1904, the plaintiff and the defendant Cahoon executed a joint note under seal at sixty days to John W. Sykes for $600, with interest from date.   This bond was secured by chattel mortgage on certain logs.   It fell due 21 August, 1904, and was paid by the plaintiff by check for $606.90, dated 27 September, 1904.   This action for contribution was begun 25 October, 1910, and the defendant pleaded the statute of limitations.

The plaintiff testified that when the bond fell due the defendant said he was not prepared to pay it, and asked the plaintiff "to take up the note and hold the same until he could pay his part of it, which would be in a short time; that this was all that was said to him by Cahoon about paying the note."   That he paid the note and that it was then indorsed by the obligee as follows:

"Pay the within note to W. E. Liverman, without recourse on me.   27 September, 1904.          J. W. SYKES."

The judge instructed the jury that if they believed all the evidence to answer the issue as to the statute of limitations "Yes."   Plaintiff excepted.   Verdict and judgment accordingly.   Plaintiff appealed.   This presents the only point in the case.   The chattel-mortgage security cuts no figure, as the logs were the joint property of the obligors and have doubtless long since been used.

In *Sherwood v. Collier,* 14 N. C., 381, *Chief Justice Ruffin* said: "A payment by any one of two or more jointly, or jointly and severally, bound for the same debt, is payment by all.   It is true that if payment be not intended by the purchaser, there is a difference, but that can only be by a stranger, or by using the name of a stranger, to whom an assignment can be made

when jointly liable. This is upon the score of the intention, and because the plea of payment by a stranger is bad upon demurrer. If the assignment of a joint security be taken to the surety himself, *there is an extinguishment, notwithstanding the intention; because an assignment to one of his own debt is an absurdity.*" This case has been often cited and approved. See Anno. Ed.

Here the payment was made by one of the principals, and not even by a surety, and there is no security to be assigned. The evidence makes out simply a payment by one of the joint obligors and a request by the other to hold up the note "until he could pay his part of it, which would be in a short time." This request implies no more than a promise by the defendant to pay his half which the law raised from the fact of payment without any express promise. There was no promise not to plead the statute if delay was given, as is held necessary, *Hill v. Hilliard,* 103 N. C., 34; nor, indeed, was there any promise to delay given by plaintiff.

The indorsement of the note to the plaintiff, one of the obligors, by the creditor, in no wise altered the fact that it was a payment and that the note was canceled thereby. The plaintiff could not hold the note and sue upon his own obligation which he had already paid. He was entitled to recover of the defendant one-half of the sum he had paid. Such action should have been brought within three years. The plaintiff not having done so, is barred by the statute of limitations, which has been pleaded by the defendant. The instruction of his Honor was correct.

No error.

WALKER, J., dissenting: The bond in this case was executed by Liverman and Cahoon, as joint obligors, on 21 June, 1904, and they promised to pay the sum of $600 to John W. Sykes on 21 August, 1904. When Liverman gave his check to Sykes the latter indorsed the note to Liverman *without recourse.*

The plaintiff, W. E. Liverman, testified as follows: When the note fell due the said Cahoon came to me and said that the note was due, and wanted to know if I would not arrange to

take it up and pay it; said he was not prepared then to pay it, and asked me to take it up and hold the same until he could pay his part of it, which would be in a short time; this was all that was said to him by Cahoon about paying the note; he, the plaintiff, told J. W. Sykes, after the conversation with Cahoon, he would pay it if he, the said Sykes, would indorse the note to him; Cahoon knew he was going to pay the note and take it up; he got him to take it up and hold it until he could pay his part. All of this was known to Sykes. Witness paid the note by check to Sykes, on 27 September, 1904, in the sum of $606.90, which covered the face value of the note and interest accrued; the defendant Cahoon has not paid any part of the note.

The court instructed the jury that, if they believed the evidence, they should answer the issue as to the statute of limitations, "Yes," which was done, and plaintiff appealed from the judgment upon the verdict. So that if, in any view of the evidence, the plaintiff was entitled to recover, notwithstanding the plea of the statute, there was error, and the judgment should be reversed. I do not deny that, under the old system of pleading, practice and procedure, this Court held that in order for a surety or person secondarily or equally and jointly liable with another to pay a debt to recover, at law, against the principal, cosurety or coöbligor, for the latter's ratable part of any sum paid by him to the creditor in satisfaction of the debt, he must have had the note or evidence of the debt assigned to a third party for his use and benefit; and I am aware that it was said in *Sherwood v. Collier,* 14 N. C., 381, that this was put on the ground that a plea of payment by a stranger was bad on demurrer. This is a fiction, pure and simple—a refinement of the ancient law—for the fact remained that the person secondarily or jointly liable paid the whole of the debt to the creditor, and the latter was, therefore, fully paid and satisfied, and assignment to a "dummy" or "man of straw" did not alter the fact. It is almost retrogressive, and certainly not progressive, to apply such a rule at this late day, when even the doctrine as to the unity of husband and wife, which takes from her the right

to contract, is about to disappear.  Is this not one of the fossilized doctrines of the common law which is not suited to this age and our present enlightened ideas?

I regret to say that ours was among the very few courts in this country, or in England, that required such an assignment, under any circumstances, and those courts elsewhere that did require it gave quite a different reason from that stated by *Judge Ruffin* for so doing.  It was said by them to be necessary because, by paying the debt, the surety or joint obligor did not acquire the legal title to the note, and, therefore, could not sue upon it *at law,* and either of two courses was open to him: he might have the note assigned, that is, the legal title, by the payee to a stranger, and then sue at law upon the note, or he could proceed in equity, when, if necessary, that court would require the payee to properly assign the note so as to enable the surety or joint obligor to recover at law.  But most of the courts held that a court of equity did not consider an assignment as necessary, and, therefore, would proceed to administer justice according to the very right of the matter, as in equity the plaintiff could sue upon an equitable title, or, at least, as equity considers that as done which should be done, it would treat the note as assigned without any formal transfer thereof.  It was also held that if it had been necessary to sue in equity upon the legal title and to have a formal assignment for that purpose, or to make the payee a party, the court would compel the payee of the note to permit the use of his name in the suit, or to execute an assignment, with proper indemnity to him against costs.

But whatever the procedure under the system prevailing prior to 1868, it is very certain that in that year, by Constitution and statute, a fundamental change was effected in common-law methods, and all forms and useless fictions were abolished and a new and more enlightened procedure was installed in its place.  Many of the quaint, queer, and impractical notions of ancient times which were found to be unsuited to our civilization, and which often defeated the right and sustained the wrong, perished with the demise of John Doe and Richard Roe, and the sometimes perplexing fiction of lease, entry, and ouster

ceased to complicate the action of ejectment and confound the pleader, so that a good title can now be vindicated by a simple statement and proof of the facts. Those forms and fictions are even now of historical value as evidence of the growth and development of the law, and as such deserve the greatest respect and reverence, but they no longer have any place in our present and more rational system of jurisprudence, which has simplified all methods of pleading, practice, and procedure. The spirit of reform, which was aroused in the early part of the last century and which brought to the leadership of the movement for a radical change in the technical and artificial system of the law and of special pleading some of the greatest statesmen, publicists, and lawyers of England and this country, has at last wrought such a reversal of those methods of procedure as to do away with the necessity of having both a judge and chancellor to try and decide one case separately and in sections, and a person aggrieved, or one seeking subrogation, may now assert his rights in one action, without regard to forms or fictions, and may recover upon a simple statement of the facts and the merits of his claim (*Calvert v. Peebles,* 82 N. C., 334), if he is the real party in interest—that is, the party having the beneficial right. Even a court of equity, as formerly constituted, would not send a plaintiff to a court of law to prosecute his case there, after giving him the legal title, but would proceed itself to award full relief. The rule is thus stated by the text-writers and is supported by the authorities: "Equity jurisdiction, having rightfully attached to a controversy, will be made effective for the purpose of complete relief, though it may involve the adjudication of purely legal questions." Fetter on Equity, p. 13 (5); *Simmons v. Hendricks,* 43 N. C., 84. Or, as put in the graphic language of *Lord Nottingham:* "Where this Court can determine the matter, it shall not be a handmaid to other courts, nor beget a suit to be ended elsewhere." The rule rests on the principle that equity prevents multiplicity of suits. *Jesus College v. Bloom,* 3 Atk., 262, 263; *Turner v. Pierce,* 34 Wis., 658; *Eastman v. Savings Bank,* 58 N. H., 421; *McGear v. R. R.,* 133 N. Y., 16. It will give a money judgment, if necessary to full relief. "A court of equity adapts its

relief to the exigencies of the case in hand. It may restrain or compel the defendant; it may appoint a receiver or order an accounting; it may decree specific performance, or order the delivery to the plaintiff of specific real or personal property; or it may order a sum of money to be paid to the plaintiff, and give him a personal judgment therefor." *Murtha v. Curley,* 90 N. Y., 378; *Sprinkle v. Wellborn,* 140 N. C., at p. 177. In the case last cited, at p. 178, it is said: "The administration of this relief is eminently proper under the reformed procedure, where the rights of parties are settled and determined, in one action, the distinction between actions at law and suits in equity having been abolished. 1 Pom. Eq. Jur., sec. 242." This just and beneficent rule, which formerly prevailed in courts of equity, has now become the fundamental principle of our present system of pleading and procedure, so that one judge and one action are now sufficient for the adjudication of all rights, legal and equitable—cases being decided upon their merits and not brought to the ordeal and test of vain and useless technicalities, so ancient as to be hoary with the age of centuries; the resultant rule, and the material one, being that a party may now recover upon an equitable title, as our courts administer both legal and equitable rights. *Farmer v. Daniel,* 82 N. C., 153; *Condry v. Cheshire,* 88 N. C., 375.

Shall we halt in the march of this progressive reform in pleading and procedure and allow a defendant to escape the payment of an honest and meritorious claim upon a flimsy technicality? But let us see what the law of this case was *formerly* and is *now.* I will not consider here the express agreement of Cahoon to pay his share and to permit the plaintiff, when he paid all, to succeed to the rights, of every kind, in the note possessed by the creditor at the very time of the payment; but will show by principle and the overwhelming weight of authority that, under the righteous doctrine of subrogation, Liverman is entitled to recover in this action, and Cahoon cannot take refuge behind the statute of limitations and escape the payment of his just and equitable share of this debt. Sheldon in his work on Subrogation, sec. 1, says that "It is a doctrine

primarily of equity jurisprudence, although its principles are now often applied in courts of common law, especially in those States in which equitable remedies are administered through the forms of law. It is a substitution, ordinarily the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. More broadly, it is the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim. The substitute is put *in all respects* in the place of the party to whose rights he is subrogated. It has been adopted from the civil law by courts of equity. In this country, under the initial guidance of Chancellor Kent, its principles have been more widely developed and its doctrines more generally applied than in England. It is treated as the creature of equity, and is so administered as to secure real and essential justice without regard to form, independently of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter."

What more of authority do we need? Bispham says that "the equity of subrogation springs naturally out of the two equities, just considered, of contribution and exoneration, and is, in fact, one of the means by which those equities are enforced. . . . This equity of subrogation is one eminently calculated to do exact justice between persons who are bound for the performance of the same duty or obligation, and is one, therefore, which is much encouraged and protected." Bispham Equity, secs. 335, 336. And again in Sheldon on Subrogation, sec. 2, it is said to be defined "as that process by which another person is put into the place of a creditor, so that the rights and securities of the creditor pass to the person who, by being subrogated to him, enters into his right. It is a legal conception, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, who is thus substituted to the

rights, *remedies,* and securities of another. The party who is subrogated is regarded as entitled to the same rights, and indeed as constituting *one* and *the same* person with the creditor whom he succeeds." This statement of the doctrine closely resembles our case and fully embraces it within its terms. "Whenever, to protect his own rights, one not a volunteer pays or satisfies a debt for which another is primarily responsible, he is substituted in equity in place of the creditor, and may enforce against the person primarily liable all the securities, benefits, and advantages held by the creditor. Like contribution, subrogation rests on principles of equity and justice, and may be decreed, though no contract or privity of any kind exists between the parties." Fetter on Equity, p. 254, sec. 170. It applies as between coöbligors, says Sheldon, as well as between principal and surety and between sureties and others secondarily liable, and where a joint maker or surety of a note has paid the debt which ought, in whole or in part, to have been paid by another, he is entitled not only to the rights, but to all the *remedies,* of the creditor by way of subrogation. Sheldon, sec. 3. "This right of subrogation among parties severally bound as principals has been denied; but the usual rule is that one of several joint debtors will, as against his codebtors, ordinarily be subrogated to the securities and means of payment of the common creditor whom he has satisfied, so as to enable him to recover from his codebtors, by means thereof, their proportional share of the indebtedness which he has discharged; and this, as in other cases of subrogation, arises rather from natural justice than from contract. Each joint debtor is regarded as the principal debtor for that part of the debt which he ought to pay, and as a surety for his codebtors as to that part of the debt which ought to be discharged by them." Sheldon, sec. 169, and many cases cited in the notes. See especially *Sterling v. Stewart,* 74 Pa. St., 445; *Moore v. State,* 49 Ind., 558; *R. R. v. Walker,* 45 N. C., 575; *Duobin v. Kuney,* 19 Oregon, 71; *Shropshire v. His Creditors,* 15 La. Ann., 705; *Boyd v. Boyd,* 3 Grattan, 113; *Martin v. Baldwin,* 7 Ala., 925; *Goodall v. Went-*

*worth,* 20 Me., 322; *Sumner v. Rhodes,* 14 Conn., 135; *Chipman v. Morrill,* 20 Cal., 131; *Young v. Vough,* 27 N. J. Eq., 325.

Those cases decide that joint debtors or coprincipals, as between themselves and their creditors, are each liable for the whole debt, but as between themselves, each is liable only for his proportion thereof, and, as to the rest, each is surety for the others, or, to express it a little differently and more exactly, where several parties execute a joint note for a debt owing by them, each is, as to his own proportion, a principal, and as to the share of each of the other makers a cosurety—a concrete example, they say, being this: Where a note is signed by three persons, each is principal for one-third, and a cosurety for the other two-thirds; and all of the said cases agree that if any one of the coprincipals performs the whole duty and pays the entire amount, he is at once subrogated to all the rights and remedies of the principal, and is clothed with the same, without impairment or prejudice, and in the sense that he takes the creditor's place as between himself and the principal who is in default; so that he can sue, just as the creditor could have done, if the debt had not been paid; and this is so whether the obligation arose out of contract or by operation of law. *Dobbins v. Rawley,* 76 Va., 537.

The doctrine is so clearly and strongly stated by *Chief Justice Brickell,* in *Owen v. McGehee,* 61 Ala., 440, that a review of the authorities would not be near complete without the addition of his words: "It is a principle of equity, having its foundation in natural justice, that when one discharges more than his just portion of a common burden, another who received the benefit ought to refund to him a ratable proportion. The principle applies not only to the relation of principal and surety, but to that of original cocontractors, and whenever parties stand in a relation in which equality of burthen is equity between them—when one ought not to bear the burthen in ease of the others, 'as all are equally bound and are equally released,' says *Judge Story,* 'it seems but just that in such a case all should contribute in proportion toward a benefit obtained by

all, upon the maxim *qui sentit commodum sentire debet et onus;* and the doctrine has an equal foundation in morals, since no one ought to profit by another's loss when he himself has incurred a like responsibility. Any other rule would put it in the power of the creditor to select his own victim, and, upon motives of mere caprice or favoritism, to make a common burden a most gross and grievous personal oppression.' 1 Story's Eq., sec. 493."

Some of the above-cited cases also hold that a suit in equity to enforce contribution by way of subrogation is far different from the action of *assumpsit* at law, founded upon the implied promise of the defaulting coprincipal to refund what has been paid to his use and for his ease and benefit, and that the two actions are governed by different principles, and that as the one who pays is completely substituted to all the rights and remedies of the creditor, without any assignment, which if necessary at all, is only required at law, the statute does not bar unless the note itself, which has been paid, is barred, or in those States which have a statute similar to ours (Revisal, sec. 399) providing for·a special limitation of ten years as to all actions for relief not otherwise provided for in the statute, that the equitable action is governed by the latter section and not by the three-years statute relating to express or implied contracts. *Chipman v. Webster* and other cases *supra.*

In *Batchellor v. Lawrence,* 99 E. C. L. (C. B., N. S.), 543, *Justice Byles,* who wrote the English treatise on Bills, when commenting upon and construing the mercantile law amendment act (19 and 20 Vict.,·ch. 97, sec. 5), which gave the creditor paying a debt the right at law to an assignment of the note to himself or a trustee, and the right "to stand in the place of creditor and to use all his remedies and, if need be, his name, upon proper indemnity," in any action or proceeding brought for the purpose of obtaining indemnification from any co-obligor or codebtor, for any advances made by him beyond his share of the liability, said: "It must be remembered that one who is liable jointly with others stands in the position of surety for their proportion of the debt, and, if he pays the whole, is

entitled to call upon them for contribution. In all rational systems of law, where a surety pays the debt he is entitled to the benefit of all securities and remedies which the creditor held. Such is the law of France, where law and equity are blended. . . . In England, prior to the passing of this act, a surety or codebtor, who had been compelled to pay the debt for which he was liable, could not obtain the benefit of any securities held by the creditor without having recourse to a court of equity, and not always then. The section in question, I think, meant to afford the party at least the same remedy at law as he would have had in equity. This it does in two modes: first, by enacting that he shall be entitled to have the securities assigned to him; secondly, by taking away the technical difficulty that before existed to his making the security available *at law,* viz., that the remedy was taken away by payment. As to the first, it is clear that the provision applies not only to persons who stand in the position of sureties, but also to joint debtors. . . . I think a 'codebtor' who pays the entire debt is a surety in the sense in which that word is used here."

But the doctrine for which I contend as having existed in courts of equity before the change in our system, and even extended by many illustrious courts to cases at law, to avoid circuity of action, is most admirably stated by *Judge Johnson,* for the Court, in *Lidderdale v. Robinson,* 12 Wheaton (25 U. S.), 594: "That a surety who discharges the debt of the principal shall, in general, succeed to the rights of the creditor, as well direct as incidental, is strongly exemplified in those cases in which the surety is permitted to succeed to those rights, even against bail, who are themselves in many respects regarded as sureties. 2 Vern., 603; 11 Vesey, 22. That such would be the effect of an actual assignment made by the creditor to the surety, or to some third person for his benefit, no one can doubt. But, in the cases last cited, we find the court of equity lending its aid to compel the creditor to assign the cause of action, and thus to make an actual substitution of the sureties, so as to perfect their claim at law. This fully affirms the right to succeed to the legal standing of their principal; and after establish-

ing that principle, it is going but one step further to consider *that as done which the surety has a right to have done in his favor, and thus to sustain the substitution without an actual assignment.* And accordingly we find the *dictum* expressed in *Robinson v. Wilson,* 2 Madd. Rep., 434, in pretty general terms, 'that a surety who pays off a specialty debt shall be considered as a creditor by specialty of his principal.' If the parties in this cause be considered as claiming under assignment from the holder of the bill, and each as assignee of the claim against his coindorsee, according to the actual state of their respective interests, there can be no doubt of the priority here claimed. This subject has undergone a very serious examination in the courts of the United States, and in cases in which, as in this, satisfaction had been made by the surety without taking an actual assignment of the debt." Is this not conclusive as authority?

The same rule is declared and supported by irresistible logic and unanswerable argument in *Tyrrell v. Ward,* 102 Ill., 29. *Justice Walker,* for the Court, said: "There is not the slightest question, under the evidence in the case, that at the time Worthington recovered his judgment the property in controversy was incumbered by legal, valid, and just liens, to nearly, if not quite, the sum of $40,000, and it is fully as clear that they were discharged and satisfied by Smith with the money of Bayard advanced for the purpose, and as a part of the loan of $50,500 which Hayes had effected for this very purpose. It is equally certain that it was the intention of Bayard, Smith, and Hayes to pay and discharge these liens, to render the trust deeds to Smith effective, and to make them a prior lien to all others in favor of Bayard. This was their clear and unmistakable purpose. All pretense that it was done for any other purpose is excluded by the testimony. Then, what effect did such a payment thus made have on the rights of the parties? Manifestly it subrogated Bayard to all rights of the prior lien-holders, precisely as they were held by them. When paid by Smith for Bayard, they were transferred to him, and equity must treat the transaction as an assignment to Bayard, as fully so as had

a formal assignment been made and indorsed on the papers evidencing these debts and liens. *This, every consideration of justice and good conscience demands.* It would be highly inequitable and unjust to defeat the intention of the parties, and visit so heavy a loss on Bayard, when he advanced the money expressly to remove these prior liens and perfect his own. Justice and authority not only sanction, but demand, that Bayard should be subrogated to all their rights."

In *Parsons v. Briddock,* 2 Vernon, 608, cited with approval in *Lidderdale v. Robinson, supra,* the chancellor thus stated the law: "The principal in a bond, being arrested, gave bail, and judgment is had against the bail. On a bill by the sureties, who had been sued on the original bond and paid the money, the court decreed the judgment against the bail to be assigned to them, in order to reimburse them what they had paid, with interest and costs." And in *Cottrell's case,* 25 Pa. St., 294, it was held that "subrogation being founded in principles of equity, may be enforced where there is no contract for a transfer of the security," and the Court, in its opinion, states this equitable principle with great force and conciseness: "Subrogation is founded on principles of equity and benevolence, and may be decreed where no contract or privity of any kind exists between the parties. Wherever one not a mere volunteer discharges the debt of another, he is entitled to all the remedies which the creditor possessed against the debtor. Actual payment discharges a judgment or other encumbrance *at law,* but, where justice requires it, we keep it afoot in equity for the safety of the paying surety. These principles, settled in numerous cases, which will be found collected in 2 Wharton's Digest, 612, are decisive against this appellant."

This covers our case in every aspect of it and shows conclusively that a court of equity, in such matters, disregards forms and seeks to enforce the rights of the parties according to their substance and real merits, which is but a foreshadowing, many years ago, of the spirit and purpose of our present liberal system of pleading and procedure. The case of *Robinson v. Wilson,* 2 Maddock's Ch., 569 (approved in *Lidderdale's case*),

was decided without regard to any statute, but upon a well-recognized doctrine of equity, that a surety who pays off a *specialty* debt of the principal shall be considered as a *specialty* creditor of the principal. It was also held in *Wright v. Morley,* 11 Vesey Ch. Rep., 42, that the surety, or coprincipal who have the same right, as we have seen, may proceed in equity against his codebtor, when he has paid the whole debt, for the payment of his share or part of the liability, without any assignment from the creditor or as if an assignment had been made, and he will have precisely all of the rights and remedies of the creditor that he would have had if the formal assignment had been made. If the specialty is not barred, he is not barred.

I will now refer to two cases, which are much alike, one decided in an English court, *Parsons v. Biddick,* which has already been cited, but which is more fully reported in 11 Vesey Ch. Rep., at p. 22, and the other decided by this Court (*Carter v. Jones,* 40 N. C., 196), which is a very strong instance of the application of this equity. It is said that, "The principal had given bail in an action. Judgment was recovered against the bail. Afterwards the surety was called upon and paid, and it was held that he was entitled to an assignment of the judgment against the bail; so that, though the bail were themselves but sureties, as between them and the principal debtor, yet, coming in the room of the principal debtor as to the creditor, it was held that they likewise came into the room · of the principal debtor as to the surety. Consequently, that decision established that the surety had precisely the same right that the creditor had, and was to stand in his place. The surety had no direct contract or engagement by which the bail were bound to him, but only a claim against them through the medium of the creditor, and was entitled only to all his rights. There are other cases establishing the same principle."

In *Carter v. Jones, supra,* it was held that where a guarantor had paid the entire debt, he was fully subrogated in equity to the rights and remedies of the creditor to whom he had paid it, as against the debtor *and his sureties,* and that a court of equity,

if not a court of law, would regard the transaction as a sale and assignment of the note to the paying guarantor. This is a strong and irresistible statement of the law in favor of the paying debtor. He is considered as a purchaser of the note, and entitled to sue upon it, for equity, as it is said, disregards forms and seeks to do justice, according to the very right of the matter.

It is suggested in *Sherwood v. Collier,* 14 N. C., 381, the sheet anchor of the majority, because *Judge Ruffin* said it involved an absurdity for the debtor to sue himself, that the debt was paid and he could only sue on the promise, implied from his payment, that he should be reimbursed. But the plaintiff does not sue himself, at least under our present system. He simply sues his debtor, who has failed to comply with his promise to pay his ratable part, the plaintiff having already paid his, and having satisfied the debt, as between debtor and creditor, all left due being that which, in equity and good conscience, comes to him by the default of his coöbligor. The obligation of the paying debtor has been satisfied and there is nothing due save what his defaulting fellow owes to him, and for this he must sue the latter, being under no obligation, as between them, to pay any part of it; but his codebtor being under the duty, in law and equity, to pay to his faithful coprincipal that part of the debt he promised to pay. Equity then steps in and compels the defaulter to do justice without regard to the mere forms of law or the legal title.

It is not to be denied that courts generally have held, at common law and under the statute, that a surety, or coöbligor— which is the same thing—who pays off a specialty debt is to be considered, in equity at least, and in all respects, as a specialty creditor of his principal. This was so held in *Robinson v. Wilson,* 2 Maddock's Ch., 569. There is an implied contract between the principal and the surety, or between coprincipals, that if one of them shall pay more than his share, the other shall be entitled to an assignment of the bond or other security, or shall have, in law and equity, precisely the same remedies as the creditor would have if the debt had not been paid to him. *Robinson v. Wilson, supra; Barrows v. McWhann,* 1 Dess Eq.

(S. C.), 409. In the last cited case, which is very much in point, the Court held that, in order to preserve and protect the right, legal and equitable, of the paying coöbligor, an assignment would be decreed, or the court would proceed as if it had been made, and that the limitation of seven years as to the implied promise did not apply, but that in regard to equitable actions; and it was further held that in order to enforce this clear equity the court would order any payment or satisfaction of the debt entered upon the record to be canceled, and would decree that the obligor, who has paid his part and also the share of his coöbligor, should stand literally in the shoes of the creditor, as to his legal and equitable rights, and with the priority and full privilege of a specialty creditor in every regard, if the debt which he paid was evidenced by an instrument under seal. *Drake v. Coltrane,* 44 N. C., 300. This was more distinctly and sharply decided in *Stokes v. Hodges,* 29 S. C. (11 Rich. Eq.), 135, it having been ruled that the paying debtor should be considered as a specialty creditor, as to rights and remedies, in all respects; and is this not in accordance with a just and perfectly fair consideration of the rights of him who has borne, not only his own share, but the share of others equally liable?

In the case of *Howell v. Reams,* 73 N. C., at marg. p. 393, *Judge Bynum* says: "The cosurety who pays the bond debt for which the other is equally bound shall be deemed a bond creditor in the administration of the estate of the deceased cosurety. The same bond which makes them the bond debtors of the obligee, by force of the statute binds them mutually to contribution. In carrying out the beneficial purposes of the statute there can be no reason why they should not occupy the same relation to each other that they do to the principal, instead of becoming by the same act of payment the bond creditors of the principal and only the simple contract creditors of each other."

But however the law may have been before the adoption of our Code system, it cannot be successfully contended that now there is any reason for adding to or upholding the old and technical rule prevailing in courts of common-law jurisdiction. We have jurisdiction both in law and equity and can decree

according to the equitable merits of the case, without resorting to two courts. This doctrine is well settled in *Dunlop v. James,* 174 N. Y., 411, as follows: "In modern times courts of law have dealt with subrogation as they would with assignments, and, when the right of action to which the plaintiff asks to be subrogated is a legal right of action, a court of law may treat a plaintiff who is entitled in equity to subrogation as an assignee, and allow him to maintain an action of a legal nature upon the right to which he claims to be subrogated." In *Bledsoe v. Nixon,* 68 N. C., 521 (cited in the opinion of the Court), *Judge Rodman* strongly intimates that the harsh rule by which a surety or coöbligor who pays off a bond must bring his action within three years on the implied promise, is confined solely to *courts of law,* and does not apply to the equitable remedy. This was so held because the right of the obligor, who pays the entire debt, to recover from his coöbligor, equally bound for the debt, depends at law, without an assignment, upon the implied promise, which being a matter arising out of contract, is barred in three years; but not so where the obligor elects to sue in equity, for in that case the ten-years statute applies, as the right is not based upon contract, but arises out of equitable principles, and it has been so expressly held in States having statutes like ours. *Zuellig v. Hemerlie,* 60 Ohio St., 27 (71 Am. St. Rep., 707); *Neal v. Nash,* 23 Ohio St., 483. And so it was held in *McAden v. Palmer,* 140 N. C., 258, that section 399 of the Revisal, providing that actions for equitable relief, or in cases where the cause of action is equitable in its nature, shall be brought within ten years after the cause of action accrues, applies to all actions of an equitable nature; and the very next section of The Code (Revisal, sec. 400) not only permits but requires that all actions shall be brought by the real party in interest, thereby abolishing forever the necessity for suing in the name of a nominal plaintiff to his use.

But the express agreement of the parties in this case is to be considered. Can any one doubt that what they meant was that the plaintiff should pay the whole debt and rely, not upon the defendant's implied promise to reimburse him, but upon the

note itself and the latter's obligation thereunder to pay? In other words, that by the express contract the plaintiff should take the place of the creditor in the note as to the defendant's share of the obligation, and be entitled to *all* of the creditor's rights and remedies. In a case exactly similar, it was held that the obligor, who paid all of the debt, was entitled in law and equity to the rights of the creditor in the note, to the extent of the defaulting obligor's part, and with reference to this the Court said: "Whatever may formerly have been held as to the effect of the transaction as above stated, the recent decisions of this Court, paying more regard than formerly to the intention of the parties and to the equities of the case, have determined that the payment, or, as it may rather be called, the advance to the creditor by one of two joint obligors of a sum equal to the entire demand, under such an agreement as is above stated, does not extinguish the entire obligation, but may leave it in force as furnishing a remedy for doing justice to the obligor who has made the advance. In other words, one coöbligor is allowed to purchase the remedy of the obligee against the other obligor, and to enforce it at law in the name of the obligee for procuring contribution or full payment, as he may be entitled to the one or the other." *Smith v. Latimer,* 54 Ky., 75.

Is not this case directly in point, and is it not in consonance with justice and right? If it has never received the sanction of the law in this State, and I think it has, is it not quite time that we were accepting it as the true and only just doctrine?

I again quote from that case, at p. 79, as it so clearly and strongly states the only true principle, and with direct application to the facts of this case: "As it is an obvious principle of equity long recognized and enforced as such, that the payment of an obligation by one who is a mere surety, whether so originally or made so by subsequent facts, entitles him to subrogation to the rights of the obligee for his own indemnity, though there be no agreement to that effect, we do not see why an express agreement to the same effect, made at the time of payment, and therefore entering into and qualifying that fact, may not be regarded and enforced by a court of law. The case

of assignments of choses in action, which though once consid-
ered by courts of law as wholly inoperative against the assignor,
have, under the influence of equitable principles, come to be
respected and enforced by those courts in actions in the name
of the obligee, affords an example, and, by analogy, a precedent
for the advances towards equity made by this Court in giving
effect to agreements between the holder of a note or bond and
one of the obligors, with respect to the consequences of a pay-
ment made by him."

We must consider that the obligor or surety, who pays the
debt, has three remedies against his coöbligor:

1. He may sue in *assumpsit* on the implied promise, or, in
this case, on the express promise, when three years inaction
will be a bar.

2. He may sue on the specialty, when ten years is the limit.

3. He may sue upon his equitable cause of action, his right
being founded solely upon the equity, when ten years will bar
under Revisal, sec. 399.

It is true, *Judge Ruffin* says, in *Sherwood v. Collier,* the idea
that a man can sue himself or receive an assignment of his own
debt involves an absurdity, but it does not apply to this case.
He is not suing himself, as the cases I have cited clearly show,
but is proceeding by action on the specialty, or by the equitable
action to recover from the defendant his fair proportion of the
joint liability—that which he promised to pay, and which he
should be made to pay. It is something this plaintiff does not
owe, but which is owing to him by the defendant. We should
not be subtle or astute to apply the statute in this case and bar
the action, for if there ever was a just claim, this is one, and we
cannot deny the relief the plaintiff seeks, even if we should
proceed under the hoary principles of the ancient law, which
existed in the days of the "learned Mr. Tidd," when a litigant's
success depended more upon the comparative wits of the oppos-
ing special pleaders than upon the real merits of the case.

It cannot be doubted that the request of the defendant to the
plaintiff, that the latter pay the money to the creditor and hold
the note until he could pay his share, and the indorsement *with-*

*out recourse,* meant but one thing, that the plaintiff should be substituted not only to all the rights in, but to all the remedies upon the note which belonged to the creditor—that he should step into his shoes. It was not intended that the note should be satisfied as between the coöbligors, but kept alive for the plaintiff's benefit. Why indorse *without recourse,* if the note was not to be kept afoot?

We must not forget that *Sherwood v. Collier* was an action at law—"debt upon a bond"—and *Judge Ruffin,* a great chancellor, was not deciding what would have been the right of the plaintiff in equity.

It may be said that Sykes was not a party to the express agreement, but this makes no difference. Equity will compel him to assign or to become a party for the purpose of protecting the obligor, who has paid him, giving him, of course, adequate indemnity against costs. How is he hurt by this course? and, under the former practice, it was quite a·usual one. But Sykes did know of the arrangement and assented to it, as the testimony of Liverman shows. It must be taken as true, as the judge charged peremptorily, that the claim was barred. In *Davison v. Gregory,* 132 N. C., 389, *Justice Connor,* speaking for the Court, observes the distinction we have made, and says that while, *at law,* the paying obligor must have the legal title to the specialty in order to sue, in equity this rule is very different, for there he is considered as having acceded by subrogation to all the rights of every kind that the creditor had before the payment and to all his securities, "without a formal assignment," citing and approving *Carter v. Jones, supra; York v. Landis,* 65 N. C., 535; *Holden v. Strickland,* 116 N. C., 185; to which may be added *Wilson v. Bank of Lexington,* 72 N. C., 621, and *Neely v. Jones,* 16 W. Va., 640, both citing and approving *Carter v. Jones, supra.* Commenting upon the last-named in *Neely v. Jones, supra,* the Court says that the headnote is not justified by the decision actually rendered, and, moreover, is not supported by the authorities (and I fully concur in that criticism); but the Court further says that this Court was right in holding that the surety or coöbligor should,

in equity, if not at law, be regarded as a purchaser of the note, or so much thereof as was not his just share of the liability, as against the other and defaulting obligor. The case is a valuable one and decides, after unanswerable reasoning, all that is necessary to support my position. It holds that if there is an express or implied agreement for an assignment of the specialty to be gathered from the nature of the transaction, it would amount to an equitable assignment, though no formal assignment was ever executed. The creditor in the transaction simply retires and the paying obligor steps into his shoes, fully clothed and panoplied with all his rights, remedies, and powers of every kind and description. He becomes himself the creditor *pro tanto* of his defaulting coöbligor. This is the modern, if not the ancient doctrine, backed by an immense weight of authority. *Cuyler v. Ensworth,* 6 Paige, 32; *Ohrem v. Wrightson,* 51 Md., 34; *Lumpkin v. Mills,* 4 Ga., 343; *Townsend v. Whitney,* 75 N. Y., 425; *McDaniels v. Lee,* 37 Mo., 204; *N. B. I. v. Hathaway,* 134 Mass., 69.

In *Mason v. Pierron,* 63 Wis., 239, it was said: "The courts of this country, however, have very generally adhered to the ancient rule, and hold that although the lien or obligation be extinguished at law by the payment of the debt, yet, for the benefit of the surety, it continues in equity in full force. The cases which illustrate the above propositions are very numerous in both countries. A great many of them will be found cited in Story's Equity Jurisprudence, in the notes to sections 492, 493, 495, 496, 499, a, b, c; 3 Pom. Eq. Jur., secs. 1418, 1419, and notes." The same statement of the law will be found in *Cuyler v. Ensworth, supra:* "According to the modern doctrine on this subject, the surety, by the mere payment of the debt, and without any actual assignment from the creditor, is, in equity, subrogated to all the rights and remedies of the creditor for the recovery of his debt against the principal debtor or his property, or against the cosureties or their property, to the extent of what they are equitably bound to contribute." So in *N. B. I. v. Hathaway, supra,* the Court held that the paying obligor "should be allowed to use the creditor's name, or the

security the creditor has obtained, to enforce the right which he has against the cosurety by reason of the payment which he has made on his account." And, finally, in *McDaniels v. Lee, supra,* the Court said: "It is a well-settled principle in courts of equity that when they once acquire jurisdiction over the subject-matter they will retain it until full justice has been done between the parties. When a party is forced to come to them for relief, they will not grant a part of his remedy, and drive him to a court of law for the balance; but they will retain jurisdiction of the cause until full and ample justice has been done."

We could cite cases almost without number to the same effect, and, when the question is properly considered, there is no discordant note. The case of *Neal v. Nash,* 23 Ohio St., 483, expressly holds that where it is understood that the payment shall not operate as a satisfaction, but the note shall be kept alive for the benefit of the paying debtor, or, if necessary, that an assignment shall be made of it, the debtor may sue directly upon the note or in equity, and under a Code like ours, though prescribing six instead of three years, on express or implied contracts, as the limitation, it was held that the six-years statute did not apply, but the ten years, the action being for equitable relief.

There is no conflict whatever between the views herein expressed and the case of *Tripp v. Harris,* 154 N. C., 296. The authorities cited in that case related to actions at law, and in *Tripp v. Harris* it was simply held that the paying debtor was subrogated to all rights of the creditor in the mortgage or collateral security, which was sufficient for the decision in the case. If there are any expressions in the cases cited which seem to be the other way, they may be accounted for upon the ground that the distinction between the rights of the paying debtor in a court of law and in a court of equity has not been kept in mind, and, besides, they were mere *dicta.* Every case in which it is said that the law requires a formal assignment to be made was an action at law and not a suit in equity.

The same reason for holding the note to be paid applies

156—14

equally to the collateral security, for it was given to secure the note, or debt represented by it, and not the new debt arising out of the implied promise of the surety or coöbligor to reimburse the party who paid the money for him. The principal debt must be kept on foot in order to save the security for the benefit of him who paid the money, and he must be subrogated to the same rights and the same debt the original creditor had. It is far better and more logical to hold that an equitable right in the note passes to the paying debtor, by virtue of the payment, which the law will make effectual by treating the assignment as having been made, or compelling the creditor to assign to a person designated by the debtor, who paid the money for his use and benefit. Any other doctrine will work great injustice, which the law seeks to avoid.

My conclusion is that the judgment should be set aside and a new trial awarded for the error of the judge in his charge as to the statute of limitations.

JUSTICE BROWN concurs in dissenting opinion of WALKER, J.