NEWBY, Justice.
*501 The doctrine of judicial estoppel preserves the integrity of judicial proceedings by preventing a party from taking inconsistent positions before the court, thus safeguarding the rule of law and seeming public confidence in the court system. Here the trial court found that, in a prior related case, defense counsel assured a federal court that defendant Hartford Fire Insurance Company (defendant or Hartford) would not collaterally attack the federal judgment post hoc by relitigating its related claims arising from the same facts. Defendant declined to join that federal litigation, but nonetheless raises substantially similar tort claims here. As such, the trial court found that defendant essentially takes the action which defense counsel stated it would not take, thereby adopting an inconsistent position. Affording the appropriate deference to the trial court, we conclude that the trial court did not abuse its discretion by invoking the doctrine of judicial estoppel to bar defendant from proceeding with its tort counterclaims. Accordingly, we reverse the decision of the Court of Appeals.
This case arises from a bonding dispute, which stems from a failed hotel development project. Four suits involving various parties, including the property owner, general contractor, lender, and bonding company, ensued, the last of which is before this Court. The third suit arose in federal court, which Hartford, the bonding company, declined to join, and during which the bonding company’s counsel made declarations to the federal court, which may reasonably be interpreted as contravening the bonding company’s actions sub judice.
On 14 November 2007, Shrijee LLC (owner and developer) contracted with Helm Builders, LLC (general contractor) for the construction of a Durham hotel project, known as Hotel Indigo. Under the contract Helm agreed to furnish labor and materials for a total cost of $13,050,000, and Helm was required to obtain a payment and performance bond.
On 20 December 2007, United Bank & Trust Company (lender) issued a construction loan to Shrijee in the amount of $13,600,000 for use on the project,[1] and Shrijee executed a “deed of trust, assignment and security agreement” on the underlying hotel real property for the benefit of the Bank, which was recorded on 21 December 2007 with the Durham County Register of Deeds. At Helm’s request, on 22 February 2008, United Bank sent a letter (the 2008 Letter) to Helm “confirm[ing] that the financing is available for the Hotel Indigo,” that “[t]he minimum *502 of $13,050,000 has been allocated for the contract amount to Helm Builders, LLC for the construction of the project,” and that “payment authorizations will be determined and conducted by a third-party architect.” The Bank further stated: “We understand this letter is to be used to release the Payment and Performance bonds for the construction of this project.”
On 8 July 2008, Hartford issued a labor and material payment bond and a performance bond “to guarantee HELM’s faithful performance of HELM’s obligations under the Contract.” Helm had executed various general indemnity agreements beforehand, dating back to 15 August 2005, which assigned to Hartford all of its rights under the construction contract, including tort claims, and which also gave Hartford the discretion to “assert and pursue all of the assigned . . . rights, actions, causes of action, claims, and/or demands.”
Over the next two years, Helm substantially completed the Hotel Indigo project, which received a conditional certificate of occupancy in August of 2009, but Shrijee withheld payment for certain work. Hartford subsequently made payments under the bonds to various subcontractors whom Helm had failed to pay. On 28 January 2010, Helm sued Shrijee in Superior Court, Durham County (Helm I), and ultimately obtained a judgment for the unpaid work in the amount of $1,074,163.20, plus interest of $352,796.40 and $278,287.05 in attorneys’ fees, on 20 October 2011 (the Shrijee Judgment).
During the pendency of the Helm I suit, on 31 January 2011, Helm sued United Bank in the United States District Court for the Middle District of North Carolina (the federal action), alleging that the 2008 Letter, which “confirmed in writing . . . that financing was being made available,” contained fraudulent “misrepresentations made by the Bank,” namely, that the monies were not actually allocated to pay Helm. Helm asserted claims of, inter alia, fraud, fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices, all of which relied upon the alleged misrepresentations in the 2008 Letter.
On 14 November 2012, counsel for Hartford contacted United Bank to “reaffirm” that “Hartford was the lawful owner of the Shrijee Judgment” under its previous general indemnity agreements. On 20 November 2012, Helm re-memorialized the agreement by executing an “Assignment of Judgment,” filed with the Durham County Clerk of Superior Court, which stated that “HELM Builders, LLC does hereby further assign, transfer and grant to Hartford all of its rights to sue ... and all other legal processes necessary to the enforcement of the [Shrijee] *503 Judgment and all proceeds recovered,” and that “the [previous indemnity agreements] shall remain in full force and effect.”
Nonetheless, on 4 June 2013, Helm filed a complaint in Superior Court, New Hanover County, against Hartford (Helm II) seeking, inter alia, a declaratory judgment that Helm’s “Assignment is null and void,” that Hartford “has no rights or interest in the [federal action],” and that “Helm’s claims asserted in the [federal action] are not subject to the assignment provisions of the Hartford Indemnity Agreements.”
In light of Helm’s apparent assignment to Hartford of the Shrijee Judgment and tort claims, United Bank became “concem[ed] over the possibility of inconsistent verdicts should United Bank be forced to litigate the same issues against Helm and Hartford in separate actions.” Furthermore, faced with “Hartford’s alleged ownership of all claims arising from or related to the [Hotel Indigo] Project,” the Bank became concerned about not only the claims arising in Helm’s name, but those arising in the name of Hartford. Ultimately, on 7 June 2013, the Bank moved the federal court to substitute Hartford as the plaintiff or, in the alternative, to join Hartford as a necessary party, noting that “it is undisputed that Hartford claims an interest in the subject of this [federal] action,” and thus any related claims arising therefrom.
On 21 June 2013, in the action sub judice United Bank filed its complaint in Superior Court, Durham County, against Hartford seeking, inter alia, a declaratory judgment that the Bank’s deed of trust securing the construction loan has priority over Helm’s lien against Shrijee for “labor performed or materials furnished.”[2]
On3 July 2013, counsel for Helm, United Bank, and Hartford appeared before the federal court regarding the Bank’s motion to include Hartford as a plaintiff or necessary party in the federal action. Noting the recently filed state court litigation, the Helm II suit and the suit sub judice, the court inquired about the “purported dispute between the plaintiff here [Helm] and Hartford with regard to what rights Hartford may or may not have in this litigation.” The court expressed concerned about
who would be the real party in interest in this case, who owns this action, and whether or not if Helm pursues this case, Hartford would have some right to come along at a later time and say we’re not bound by that, we own this, and we think Helm should have pursued a different *504 course, we don’t think they waived anything that would effect [sic] us. That bothers me. So my question to you is, are Helm and Hartford on the same page with regard to our proceeding ahead with this lawsuit?
Counsel for Hartford responded: “Hartford has no objection with this case moving forward without Hartford..., and that Hartford does not—will not seek to collaterally attack any judgment entered in this action with Hartford not as a named party.” Counsel acknowledged concerns regarding the possible estoppel of its claims in the related actions, stating to the court: “To the extent there are—there is evidence brought to the Court’s attention in this case, it would be Hartford’s position that there would be no issue preclusion as to Hartford in that related litigation.”
The court responded: “I don’t know that I can make any ruling with regard to issue preclusion that would be applied by the state court, . . . [and] anything I say or do would be only advisory with regard to what the state court may find to be precluded.” In other words, if Hartford declined to join the federal action, it would assume the risk that its claims may be estopped in the related state court litigation.
Counsel for Hartford acquiesced, stating:
[I]t is clear from Hartford’s perspective that it is not a necessary party to this litigation. To the extent Your Honor does have concerns as to any purported assignments of the general agreements indemnity as they are brought to the Court’s attention, or issues of equitable subrogation, I think that that could be essentially be handled post-litigation through inteipleader action.
The court agreed. Hartford ultimately declined to join the federal action.
After extensive discovery and deposition testimony, Helm’s claims arising from the 2008 Letter were tried before a juiy in the federal action. As described by United Bank, “Counsel for Hartford sat through the majority of the trial and never advised the court of any reason to add Hartford to the case.” On the verdict sheet the jury expressly concluded that the February 2008 Letter did not contain “false information” and that Helm did not suffer harm therefrom. Following adjudication of Helm’s claims, on 16 July 2013, the federal court ordered that Helm “have and recover nothing from [United Bank]” and dismissed the case with prejudice.
*505 On 17 October 2013, Hartford answered United Bank’s complaint sub judice and filed, inter alia, tort counterclaims based on the alleged falsity of the 2008 Letter, which are the only claims at issue before this Court.[3] Based on that alleged falsity, Hartford raises strikingly similar tort counterclaims as those raised by Helm in the federal action, consisting of fraud, fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices. Hartford alleges that United Bank acted fraudulently by “ma[king] false and misleading representations” in the 2008 Letter and that “Hartford would not have issued both the Payment and Performance Bonds absent the Bank’s express representations” therein. In response, United Bank points to the related federal action and raises affirmative defenses of “res judicata and/or collateral estoppel” because the same tort claims “were litigated to final judgment” by Hartford’s assignor Helm. The Bank asserted other defenses as well, including waiver, unclean hands, and “judicial estoppel/estoppel by inconsistent positions” based on Hartford’s counsel’s declarations to the federal court.
On 25 February 2014, United Bank successfully moved for judgment on the pleadings as to the tort counterclaims. See N.C.G.S. § 1A-1, Rule 12(c) (2016). The trial court found that “Hartford is in privity with Helm” due to Helm’s prior assignment. Given “Hartford’s counsel’s representations to [the federal court]” and “Hartford’s decision not to participate in the [federal action],” which would have afforded Hartford “a full and fair opportunity to litigate its claims,” the trial court found that “Hartford is bound by the judgment entered in the [federal action].” Citing Whitacre Partnership v. BioSignia, Inc., 358 N.C. 1, 591 S.E.2d 870 (2004), the trial court concluded that “Hartford is judicially estopped from asserting the counterclaims against United Bank.” In addition to finding judicial estoppel, the trial court found that Hartford’s counterclaims were also barred by the doctrines of collateral estoppel and res judicata because the “central issue to the Counterclaims all revolves around the truth or falsity of the statements in the February 2008 Letter,” which statements the federal jury had already determined “to be true.” Hartford appealed to the Court of Appeals.
In a divided opinion, the Court of Appeals reversed the dismissal of Hartford’s tort counterclaims. Old Republic Nat’l Title Ins. Co. v. Hartford Fire Ins. Co., _ N.C. App. _, 785 S.E.2d 185, 2016 WL 1321139 (2016) (unpublished). The majority concluded that, though *506 “Hartford was in privity with respect to [Helm’s] claims in the federal action,” Old Republic, 2016 WL 1321139, at *4, such participation “only bars any claim Hartford might otherwise have (as assignee of [Helm’s] claims) to recover for [Helm’s] damages based on [Helm’s] reasonable reliance on representations made by United Bank,” id. The dissent opined that Hartford had “numerous opportunities” to join the federal action and that the doctrines of res judicata and collateral estoppel bar its tort counterclaims. Id. at *12 (Hunter, Jr., J., dissenting). Neither the majority nor the dissent, however, addressed the trial court’s imple-, mentation of judicial estoppel, despite arguments made by the parties. United Bank appeals as a matter of right.
North Carolina has long recognized the importance of candor with the trial court. See Whitacre P’ship, 358 N.C. at 12, 591 S.E.2d at 878 (citing Kannan v. Assad, 182 N.C. 77, 78, 108 S.E. 383, 384 (1921)). The doctrine of “judicial estoppel seeks to protect the integrity of the judicial process,” id. at 16, 591 S.E.2d at 880, “which ‘lies at the foundation of all fair dealing ... and without which, it would be impossible to administer law as a system,’ ” id. at 27, 591 S.E.2d at 887 (quoting Armfield v. Moore, 44 N.C. (Busb.) 157, 161 (1852)).
A party is generally not “allowed to change his position with respect to a material matter, during the course of litigation, nor should he be allowed to ‘blow hot and cold in the same breath.’ ” Id. at 12, 591 S.E.2d at 878 (quoting Kannan, 182 N.C. at 78, 108 S.E. at 384); see id. at 29, 591 S.E.2d at 888 (Judicial estoppel is proper when “a party’s subsequent position ... [is] ‘ “clearly inconsistent” with its earlier position.’ ” (quoting New Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed 2d 968, 978 (2001))). Unlike its “closely related” cousins, the doctrines of collateral estoppel and res judicata, judicial estoppel is “dissimilar in critical respects.” Id. at 16, 591 S.E.2d at 880 (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). Judicial estop-pel seeks to protect the judicial process itself and does not require “ ‘mutuality’ of the parties,” detrimental reliance, or that an issue have been “actually litigated in a prior proceeding.” Id. at 16-18, 591 S.E.2d at 880-82 (citations omitted).
As a “discretionary equitable doctrine,” id. at 26, 591 S.E.2d at 887, judicial estoppel empowers the court with the necessary “means to protect the integrity of judicial proceedings where [other] doctrines . .. might not adequately serve that role,” id. at 26, 591 S.E.2d at 887 (citations omitted). Because judicial estoppel “protects] the courts rather than the litigants,... a court, even an appellate court, may raise [judicial] *507 estoppel on its own motion.” Matter of Cassidy, 892 F.2d 637, 641 (7th Cir.) (footnote omitted) (citing Allen, 667 F.2d at 1168 n.5)), cert. denied, 498 U.S. 812, 111 S. Ct. 48, 112 L. Ed. 2d 24 (1990).
We review de novo the trial court’s order granting judgment on the pleadings. See CommScope Credit Union v. Butler & Burke, LLP, _ N.C. _, _, 790 S.E.2d 657, 659 (2016). The trial court’s implementation of judicial estoppel as a basis to grant the order, however, is reviewed for abuse of discretion, Whitacre P’ship, 358 N.C. at 38, 591 S.E.2d at 894 (citing New Hampshire, 532 U.S. at 750, 121 S. Ct. at 1814-15, 149 L. Ed 2d at 977-78), and will only be overturned “upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision,” In re Foreclosure of Lucks, _ N.C. _, _, 794 S.E.2d 501, 506 (2016) (quoting State v. Riddick, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)).
Though the parties have primarily focused their briefing on the companion doctrines of collateral estoppel and res judicata, we proceed no further than judicial estoppel. Hartford argues that it is not prosecuting its “Assigned Claims” from Helm but rather “its own, independent Tort Claims.” Such a factual inquiry, however, reaches beyond the appropriate standard of review for judicial estoppel. Presented with Hartford’s counsel's apparently contradictory declarations before the federal court and the substantial similarities of its tort claims to those of Helm, as revealed in the pleadings, the trial court reasonably invoked judicial estoppel to prevent Hartford from taking an inconsistent position, and therefore, did not abuse its discretion.
By filing its similar tort counterclaims, the trial court could reasonably conclude that Hartford takes the action that it stated to the federal court it would not take. See Whitacre P’ship, 358 N.C. at 29, 591 S.E.2d at 888. The federal court expressed concerns that Hartford might “come along at a later time and say we’re not bound by [the federal action]” and further advised Hartford that it could not rule regarding its state-court estoppel concerns. Despite knowing of the estoppel risk, Hartford declined to join the federal action and stated that it “will not seek to collaterally attack any judgment entered in this action with Hartford not as a named party.” See Hamilton v. Zimmerman, 37 Tenn. (5 Sneed) 39, 47-48 (1857) (“The law . .. will not. . . suffer a man to contradict or gainsay, what, under particular circumstances, he may have previously said or done.”); see also Collateral Attack, Black’s Law Dictionary (10th ed. 2014) (“[A]n attempt to undermine a judgment through a judicial proceeding in which the ground ... is that the judgment is ineffective.”). *508 Nonetheless, Hartford seeks to raise similar fraud claims to those of its assignor Helm, all of which contest the same adjudicated facts in the federal action—the very situation about which the federal court expressed concern. Moreover, United Bank moved to join Hartford as a necessary party in that action, seeking to avoid such relitigation.
Allowing Hartford to proceed in the face of its own contravening assertions made -before the federal court poses a significant threat of inconsistent court determinations. See Whitacre P’ship, 358 N.C. at 13-14, 591 S.E.2d at 879; Jones v. Sasser, 18 N.C. (1 Dev. & Bat.) 452, 464 (1836) (Estoppel is “founded upon the great principles of morality and public policy... to prevent that which deals in duplicity and inconsistency.”); see also Cates v. Wilson, 321 N.C. 1, 18, 361 S.E.2d 734, 744 (1987) (Mitchell, J., concurring in result) (“A lawsuit is not a parlor game . . . .”). Permitting such a conflicting position and inconsistency would serve to undermine public confidence in the judicial process.
In sum, Hartford had ample opportunity to litigate all of its related claims, including those attributable to its assignor Helm and to Hartford individually, by joining the federal action. Hartford elected not to do so. Given the statements made by Hartford’s counsel before the federal court and the substantial similarity of its counterclaims, which contest prior adjudicated facts, we conclude that the trial court reasonably invoked judicial estoppel to restrain Hartford from adopting an inconsistent position. See Whitacre P’ship, 358 N.C. at 26-27, 591 S.E.2d at 887 (Judicial estoppel serves “as a gap-filler” and is appropriate “where the technical requirements of’ its companion estoppel doctrines may not be met.). The trial court did not abuse its discretion and therefore, properly dismissed Hartford’s tbrt counterclaims. Accordingly, we reverse the decision of the Court of Appeals, which reversed the trial court’s dismissal of the tort counterclaims.
REVERSED.

. Farmers Bank & Trust was the original issuer of the loan and merged with United Bank in November 2008. For purposes of this opinion, actions by Farmers Bank before the merger are referred to as those of United Bank, its undisputed successor in interest.

. Old Republic National Title Insurance Company, as the title insurer for the deed of trust, is a co-plaintiff.

. On 13 October 2014, the trial court entered a consent judgment, which the parties concede resolved all other remaining claims.