IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-924

Filed 16 July 2024

Forsyth County, No. 21 CVS 5644

DHIRAJLAL C. PATEL, Plaintiff,

v.

KIRAN S. PATEL, SANDIP PATEL, and SHIV INVESTMENTS, INC., Defendants.

Appeal by Defendants from order entered 11 May 2023 by Judge Eric Morgan in Forsyth County Superior Court. Heard in the Court of Appeals 20 February 2024.

> *James, McElroy & Diehl, P.A., by Alexandra B. Bachman, Preston O. Odom, III, and J. Alexander Heroy, for the Plaintiff-Appellee.*
>
> *Bennett Guthrie PLLC, by Joshua H. Bennett and Mitchell H. Blankenship, for the Defendants-Appellants.*

GRIFFIN, Judge.

Defendants Kiran S. Patel, Sandip Patel, and Shiv Investments, Inc., appeal from the trial court's order granting judgment on the pleadings to Plaintiff Dhirajlal C. Patel in his action to renew a prior judgment for collection of debts owed by Plaintiff and Defendants on a commercial loan. Defendants contend the trial court erred because Plaintiff was a co-debtor who owed the same judgment he was seeking to collect and was therefore barred from collecting on the judgment. We hold the facts undisputably show Plaintiff is equitably barred from enforcing the judgment, and therefore reverse the trial court's order.

## I.     Factual and Procedural Background

In 2011, Bank of the Carolinas (the "Bank") filed a complaint against Plaintiff and Defendants alleging that they had all committed breach of contract, as obligors or guarantors, with respect to defaulted payments owed for two commercial loans. On 18 September 2012, the trial court granted summary judgment in favor of the Bank and against both Plaintiff and Defendants (the "2012 Bank Judgment").

On 22 July 2013, the Bank assigned its right to enforce the 2012 Bank Judgment to Plaintiff in exchange for consideration less than the total value of the judgment, even though he was a debtor to the debt owed therein, and expressed at that time that "no part of the [2012 Bank Judgment] has been previously paid, assigned, or transferred." Between July 2013 and November 2021, Plaintiff acted on his position as assignee and owner of the 2012 Bank Judgment and collected varying payments on it from Defendants.

On 9 November 2021, Plaintiff filed a complaint initiating the present action against Defendants, seeking to renew and enforce the 2012 Bank Judgment. All Defendants filed answers to Plaintiff's complaint. On 23 February 2023, Plaintiff filed a motion for judgment on the pleadings or, alternatively, summary judgment. On 27 March 2023, Defendants also filed a motion for judgment on the pleadings, as well as a motion to compel.

On 10 April 2023, the trial court held a virtual hearing on Plaintiff and Defendant's motions over WebEx. On 11 May 2023, the trial court entered a written

order granting Plaintiff's motion for judgment on the pleadings. Defendants timely appeal.

## II. Analysis

Defendants contend the trial court erred by granting Plaintiff's motion for judgment on the pleadings in his action to renew the 2012 Bank Judgment, and by denying their motion for the same, because its decision turns on an error of law. Defendants argue judgment on the pleadings for Plaintiff was improper because Plaintiff is a co-debtor under the judgment, rendering it unenforceable. Plaintiff refutes Defendants' contention, and also asserts that Defendants wage an untimely collateral attack on the 2012 Bank Judgment's enforceability.

"We review de novo the trial court's order granting judgment on the pleadings." *Old Republic Nat'l Title Ins. Co. v. Hartford Fire Ins. Co.*, 369 N.C. 500, 507, 797 S.E.2d 264, 269 (2017) (citation omitted). "In deciding whether to grant or deny a motion for judgment on the pleadings, the trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party, with all well pleaded factual allegations in the nonmoving party's pleadings being taken as true and all contravening assertions in the movant's pleadings being taken as false." *Anderson Creek Partners, L.P. v. Cnty. of Harnett*, 382 N.C. 1, 12, 876 S.E.2d 476 (cleaned up), 485, *reh'g denied*, ___N.C. ___, 878 S.E.2d 145 (2022). "A party seeking judgment on the pleadings must show that the complaint fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal

bar thereto." *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70, 852 S.E.2d 146, 151 (2020) (cleaned up).

To renew the enforceability of a prior judgment, the owner of the judgment may bring an independent action alleging "[1] the existence of a prior judgment against the defendant; [2] the fact that full payment on the judgment has not been made; and [3] an accounting of the unpaid balance due and any applicable interest." *Unifund CCR Partners v. Young*, 282 N.C. App. 381, 386, 871 S.E.2d 347, 351 (2022). Defendants do not challenge Plaintiff's assertions that the 2012 Bank Judgment was never fully paid, or the amount of the alleged unpaid balance. Defendants argue only that, even considering the pleadings in the light most favorable to Plaintiff, Plaintiff cannot successfully show the existence of a prior judgment.

In their efforts to guide our resolution of this issue, Plaintiff and Defendants each assert that one of two cases of North Carolina precedent should control: *Hoft v. Mohn*, 215 N.C. 397, 2 S.E.2d 23 (1939), and *Unifund CCR Partners v. Hoke*, 273 N.C. App. 401, 848 S.E.2d 508 (2020).

Plaintiff relies on *Unifund CCR Partners v. Hoke*. The trial court specifically cited *Hoke* in its order granting Plaintiff's motion for judgment on the pleadings. In *Hoke*, the plaintiff purchased a credit account including debts owed by the defendant, then obtained a judgment against the defendant to collect those debts. Ten years later, the plaintiff sought to renew its judgment against the defendant. *Hoke*, 273 N.C. App. at 402, 848 S.E.2d at 509. The defendant argued that the plaintiff, in

bringing its renewal action, failed to satisfy heightened pleading requirements associated with its status as a "debt buyer." *Id.* at 403, 848 S.E.2d at 509. The court disagreed with the defendant's argument and otherwise held no genuine issues of material fact existed because the defendant did "not challenge the existence or validity of the judgment, nor the validity of the underlying debt." *Id.* at 406, 848 S.E.2d at 511. In reaching its holding that the plaintiff was not a "debt buyer," the court clarified that, "[b]ecause a claim was already filed and a judgment was rendered, the action [then] before this Court involve[d] that judgment and not the underlying debt claim." *Id.* at 405, 848 S.E.2d at 511. Therefore, the only evidence of the defendant's debt, which was material to the renewal action, was the judgment being renewed. *Id.* at 405, 848 S.E.2d at 511.

We hold *Hoke* to have limited application to the present case. Here, Defendants do challenge the existence of the 2012 Bank Judgment and do not make any assertions that Plaintiff failed to comply with statutorily heightened pleading requirements. However, *Hoke* is instructive as to what evidence is material in an action to renew a judgment: the existence of that judgment, notwithstanding any issues of fact or law corresponding to the underlying debt claims. *Id.* at 406, 848 S.E.2d at 511. Defendants do not contest the legal foundations of the 2012 Bank Judgment or seek to present evidence concerning the legality or accuracy of the debts supporting it. Rather, they contend that Plaintiff's possession of the judgment is what renders an otherwise valid judgment unenforceable.

Defendants direct this Court to *Hoft v. Mohn*, a 1939 case where the North Carolina Supreme Court affirmed the lower court's refusal to enforce a judgment because the plaintiff stood in the position of one of the judgment co-debtors. *Hoft*, 215 N.C. at 400, 2 S.E.2d at 26. Though the plaintiff was not an original debtor on the judgment, his possession of the judgment was the result of a series of transfers from an original judgment co-debtor. *Id.* at 398, 2 S.E.2d at 24. The plaintiff sought to recover the remaining balance of the judgment from the other judgment co-debtors because the full value of the judgment had never been paid. *Id.* Our Supreme Court explained that, "[s]ince remote days of the common law, it has been held that payment by one or more of those jointly and severally liable on a judgment is an extinguishment of the judgment, and that an assignment of the judgment to such person or persons will not serve to keep it alive against the others." *Id.* (citations omitted). The Court in *Hoft* held that the judgment could not be enforced by the plaintiff because he "must be held to represent the [judgment co-debtor] to whose rights and privileges he has succeeded and which he exercises," and law and equity prevented the judgment co-debtor from recovering the balance of the judgment from the non-paying co-debtors. *Id.* at 400, 2 S.E.2d at 25–26.

Though the facts of *Hoft* appear to involve a judgment co-debtor's attempt to enforce the remaining debt owed on a judgment following its partial satisfaction, the rules of law cited and followed by the *Hoft* Court arose from well-established jurisprudence, which traditionally applies when one judgment co-debtor pays off the

*entirety* of the judgment and attempts to receive an assignment of the judgment in exchange. In such case, the paying judgment debtor has no right to subrogation of the whole debt from their fellow co-debtors:

> The Court is not aware of any principle, on which, after the satisfaction of a judgment for a partnership debt by one of the partners sued, equity ought to extend or preserve the vitality of the legal security, under the guise of an assignment, so as to charge the bail of the other partner.
>
> . . .
>
> Upon the whole, the Court is of opinion, clearly, that the doctrine of subrogation cannot be applied between partners and joint principals, so as, after payment to the creditor, to affect the bail of one of them for the benefit of the other. It is against conscience to enforce the judgment for that purpose.

*Hinton v. Odenheimer*, 57 N.C. 406, 407–08 (1859). Rather, the judgment creditor's right to payment from each co-debtor is extinguished upon the full payment of the debt, and the paying judgment co-debtor cannot be assigned what no longer exists. The judgment ceases to exist, and the judgment co-debtor who paid the judgment instead has both a common law and a statutory right of contribution from his fellow co-debtors. *Norris v. Johnson*, 246 N.C. 179, 182, 97 S.E.2d 773, 775 (1957).

Because a fully satisfied judgment would otherwise cease to exist, North Carolina has enacted statutory methods by which a co-debtor may keep the judgment alive to assist in obtaining contribution from his co-debtors. *See Jones v. Rhea*, 198 N.C. 190, 192, 151 S.E. 255, 256 (1930) (discussing the statutory procedure for

preservation of a judgment to allow contribution by assigning the satisfied judgment to a third-party trustee, under then-C.S. § 618); *Hoft*, 215 N.C. at 399, 2 S.E.2d at 25 (holding circumstances did not show compliance with C.S. § 618). North Carolina has more recently codified a statute to simplify obtaining contribution payments from non-paying co-debtors, requiring only that a notation be made on the judgment docket to preserve the judgment as a lien against non-paying co-debtors. N.C. Gen. Stat. § 1B-7 (2023); *see Holcomb v. Holcomb*, 70 N.C. App. 471, 472, 320 S.E.2d 12, 13 (1984) (recognizing the statutory right to keep a judgment alive to enforce contribution in N.C. Gen. Stat. § 1B-7 as a successor to C.S. § 618).

Our Supreme Court has also held that a judgment may only be purchased by and assigned to a stranger to the judgment. Put simply, "[a]n assignment of a security to one of the parties to it, is a satisfaction--if it is intended to keep it on foot, the assignment should be to a stranger." *Sherwood v. Collier*, 14 N.C. 380, 382 (1832). If a payment is made to the judgment creditor by a party to the judgment with the intent to purchase the judgment, the actual legal effect of the payment is a satisfaction of the debt owed:

> [P]ayment discharges a judgment, as effectually as entering satisfaction of record. Here there was full payment. It was intended as such by Hooks, and so received by the creditor. A payment by any one of two or more, jointly, or jointly and severally bound for the same debt, is payment by all; and any of the parties may take advantage of it and plead it to an action brought by a satisfied creditor, or in his name by the sureties. It is true, that if a payment be not intended, but a purchase, there is

- 8 -

a difference. But that can only be by a stranger, or by using the name of a stranger, to whom an assignment can be made when there is but a single security, and that, one upon which all the parties are jointly liable. This is upon the score of intention, and because the plea of payment by a stranger is bad upon demurrer. If the assignment of a joint security be taken by the surety himself, there is an extinguishment, notwithstanding the intention; because an assignment to one, of his own debt, is an absurdity.

*Id.* at 381; *see Towe v. Felton*, 52 N.C. 216, 218 (1859) ("We [ ] hold that a payment, made by one who is a principal obligor, or by one copartner of a partnership debt, as simply a payment."); *Liverman v. Cahoon*, 156 N.C. 187, 189, 72 S.E. 327, 328 (1911); *Bunker v. Llewellyn*, 221 N.C. 1, 3–4, 18 S.E.2d 717, 718 (1942) ("[I]f [the] plaintiffs be the owners of the note, the allegations are tantamount to saying that [the] plaintiffs paid the bank and took up the note. If so, [the] plaintiffs and [the] defendants being coprincipals and all equally liable on the note, such payment constitutes extinguishment of the note . . . [and] their remedy against the defendants, their coprincipals, would be in equitable contribution.").

Applying these principles to the present case, we are left only with the question of the practical effect of a payment of less than the entire amount of a judgment by a party to the judgment, purporting to purchase the entire debt. We find guidance from our Supreme Court's decision in *Scales v. Scales*, 218 N.C. 553, 554–55 11 S.E.2d 569, 570 (1940). In *Scales*, three judgment co-debtors were jointly and severally liable for the entirety of a $3,250 judgment. *Id.* at 553, 11 S.E.2d at 569. One of the judgment co-debtors reached a deal with the judgment creditor whereby he paid a total of $225

as full payment for the debt owed under the judgment, and the judgment creditor then assigned the judgment to a third-party trustee (keeping the judgment alive in compliance with C.S. § 618). *Id.* By preserving the judgment under C.S. § 618, the judgment remained as a lien on property owned by one of the non-paying co-debtors. *Id.* The paying co-debtor requested the court consider the judgment satisfied, and then sought contribution from the non-paying co-debtors for his payment to the judgment creditor. *Id.* at 554, 11 S.E.2d at 570.

A non-paying co-debtor filed an action against the paying co-debtor to have the lien removed from his land, arguing that the paying co-debtor could not seek contribution because he satisfied the judgment by paying an amount less than the entire debt owed. *Id.* at 556, 11 S.E.2d at 571. This Court disagreed and explained that the paying co-debtor "not only paid his proportionate part, but the entire judgment of $3,250 and the 'entire debt' which was reduced to judgment." *Id.* The Court then clarified that the right of contribution applies to the amount actually paid to satisfy the judgment, notwithstanding the amount of the original debt owed:

> The basis for ascertainment of the excess paid is not necessarily the amount of the original common obligation; if the claimant has satisfied the entire debt or demand or relieved the whole burden by payment of a less amount, he is entitled to contribution only on the basis of the amount actually paid. In the case of a compromise made by the claimant, the sum recoverable must be ascertained on the basis of the amount paid in compromise, each contractor being entitled to the benefit of the compromise[.]

*Id.* The Court ultimately held that the paying co-debtor was entitled to receive $75 from each non-paying co-debtor, the non-paying co-debtor's one-third share of the $225 that the paying co-debtor paid to satisfy the judgment. *Id.*

*Scales* presented a case where the paying co-debtor voluntarily categorized his payment as a satisfaction of the judgment; had the creditor assign the judgment to a third-party trustee in compliance with C.S. § 618, the relevant contribution statute at the time; and the Court then issued its holding on whether the paying co-debtor's actions qualified for contribution under the statute. Here, Plaintiff asserts a different reason for his payment to the Bank, and the requisite notations were not made to keep the judgment alive pursuant to N.C. Gen. Stat. § 1B-7, our current contribution statute. Nonetheless, common law principles of equitable contribution still apply absent compliance with a statutory right to contribution, *see Holcomb*, 70 N.C. App. at 473, 320 S.E.2d at 14, and we do not find these differences material to the holding of *Scales.* The present case presents a substantially similar circumstance as *Scales*, and we reach the same result.

When we read *Hoft*, *Sherwood*, *Scales*, and the remainder of our jurisprudence as a cohesive body of law, the following principles emerge: (1) A judgment on a debt extinguishes, unless it is preserved by statutory process, when the amount owed under the judgment is satisfied. (2) If a debt is transferred to its debtor, the amount owed as a liability merges into the debtor's assets, the debt no longer exists, and there is no longer any amount owed on any judgment for that debt; the judgment ceases to

exist. (3) If a co-debtor pays any amount to his judgment creditor and causes the judgment to extinguish, it may only function as a payment in full satisfaction of the debt, and he is entitled not to subrogation of the entire amount of the debt or the entire amount paid, but to a ratable contribution from his co-debtors.

Though Plaintiff, here, intended his payment to the Bank to be a purchase of the 2012 Bank Judgment for his sole benefit, a judgment cannot be effectually assigned to its own debtor. *See Sherwood*, 14 N.C. at 381 ("[N]otwithstanding the intention; . . . an assignment to one, of his own debt, is an absurdity[.]"). Plaintiff instead obtained a satisfaction of the judgment. *Scales*, 218 N.C. at 556, 11 S.E.2d at 571. By agreeing to pay the Bank a lesser amount than the full amount owed under the judgment in exchange for a purported assignment of the judgment, Plaintiff has effectually negotiated a release of the debt owed for a lesser sum, paid in lump sum, on behalf of himself *and* his co-debtors. Plaintiff first entered into the two commercial loan agreements with the benefit of having the burden of paying those loans split across multiple parties, providing the Bank with a greater incentive to enter into the agreement. Equity must not now allow Plaintiff to have the burden of repayment relieved without spreading that benefit across the same parties. Plaintiff has "relieved the whole burden by payment of a less amount, he is entitled to contribution only on the basis of the amount actually paid." *Id.* Plaintiff may not renew and enforce the 2012 Bank Judgment; rather, he should have brought an action for

ratable contributions from his co-debtors of the amount he paid to have the 2012 Bank Judgment purportedly assigned to him. *Id.* at 555–56, 11 S.E.2d at 570–71.

Because the legal effect of Plaintiff's receipt of the 2012 Bank Judgment amounts to a payment satisfying the full debt, the judgment ceased to exist. The pleadings forecast no evidence that a notation was made under N.C. Gen. Stat. § 1B-7 to keep the judgment alive. Plaintiff cannot show an existing judgment. We therefore hold that the pleadings show undisputed facts which defeat Plaintiff's claim for renewal.

Notwithstanding the substantive merits of Defendants' claims, Plaintiff also asserts Defendants' argument should fail because it should be construed as an untimely collateral attack on the judgment under Rule 60(b). Rule 60(b) of the North Carolina Rules of Civil Procedure allows a party to request the court relieve that party from a final judgment for reasons including, among others, that "[t]he judgment has been satisfied . . . or it is no longer equitable that the judgment should have prospective application;" or "any [ ] reason justifying relief from the operation of the judgment." N.C. R. Civ. P. 60(b)(5), (6) (2023); *see Carter v. Clowers*, 102 N.C. App. 247, 254, 401 S.E.2d 662, 666 (1991) ("The purpose of Rule 60(b) is to strike a proper balance between the conflicting principles of finality and relief from unjust judgments."). Though "[t]he broad language of [Rule 60(b)](6) 'gives the court ample power to vacate judgments whenever such action is appropriate to accomplish justice[,]" "[m]otions under Rule 60(b) must be made 'within a reasonable time.'"

*Brady v. Town of Chapel Hill*, 277 N.C. 720, 723, 178 S.E.2d 446, 448 (1971) (citations omitted).

Plaintiff is correct that when the legal legitimacy of an underlying judgment is brought before the court in a renewal action, the argument can be understood as a collateral attack on the judgment being renewed. In *Unifund CCR Partners v. Young*, the defendants objected to the plaintiff's renewal of a judgment by claiming that the underlying judgment was the product of fraud. *Young*, 282 N.C. App. at 386, 871 S.E.2d at 351–52. The Court interpreted that this fraud claim was really an attack on the legality of the underlying judgment which was best construed as a Rule 60(b) motion for relief from judgment and was time-barred. *Id.*

However, despite Defendants' ten-year delay in challenging Plaintiff's possession of the 2012 Bank Judgment, this case does not present a collateral attack on the 2012 Bank Judgment that we must construe as a Rule 60(b) motion. It is important to distinguish the order in which the underlying judgment was obtained and the right to collect the debt owed under the judgment was transferred. In *Young*, the plaintiff acquired the defendants' debt first, then obtained a judgment on those debts. The appeal then presented challenges to the original judgment holders' allegedly unjust acquisition of the judgment being renewed. In *Hoft*, the original judgment holder acquired a judgment on debts owed by the defendant. Thereafter, the judgment was transferred into the hands of another party—notably, a co-debtor on the judgment—and the defendant challenged the enforceability in that party's

hands.  The *Hoft* defendant's argument was not a collateral attack because he took no issue with the judgment, only challenging its enforceability after it ceased to exist as the result of an assignment to a judgment debtor.  Here, the facts mirror the material notes of *Hoft*, and are likewise not a collateral attack.

## III.   Conclusion

We hold that the undisputed facts presented in the pleadings show that Plaintiff cannot present evidence of an existing judgment because the legal effect of Plaintiff's acquisition of the 2012 Bank Judgment must be considered a payment satisfying the full debt owed; the judgment ceased to exist upon its assignment.  The trial court therefore erred in granting judgment on the pleadings for Plaintiff and in denying judgment on the pleadings for Defendants.

REVERSED.

Judges ZACHARY and GORE concur.